**EL PASO NATURAL GAS CO., a Corporation, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**UNITED STATES of America, Appellant,**

**v.**

**EL PASO NATURAL GAS CO., a Corporation, Appellee.**

**No. 19445.**

United States Court of Appeals Ninth Circuit.

March 3, 1965.

Craig Campbell, Karr, Tuttle, Campbell, Koch & Granberg, Seattle, Wash., for appellant.

John W. Douglas, Asst. Atty. Gen., Morton Hollander, Richard S. Salzman, Attorneys, Dept. of Justice, Washington, D. C., Wm. N. Goodwin, U. S. Atty., Seattle, Wash., for appellee.

Before HAMLIN, MERRILL and ELY, Circuit Judges.

MERRILL, Circuit Judge:

El Paso Natural Gas Co. has brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1958), for loss of its airplane following collision with an aerial span maintained by the Coast Guard at LaPush, Washington. The United States has counterclaimed for damages to the span. Each party asserts that it was free from negligence and that the other was guilty of wanton misconduct. The action was tried without jury in the District Court for the Western District of Washington, Northern Division. That court found each party guilty of negligence, but neither guilty of wanton misconduct. Upon the complaint of El Paso judgment was rendered in favor of the United States; upon the counterclaim of the United States judgment was rendered in favor of El Paso. Both parties have appealed. The sole issue is whether, in its findings of negligence and lack of wanton misconduct, the District Court was clearly erroneous. Fed.R.Civ.P. 52(a); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The accident occurred June 27, 1961. The span consisted of five wires suspended for a distance of 1900 feet. It connected the Coast Guard station at LaPush with James Island, on which Coast Guard navigational aids were located. The District Court found that the plane was at an altitude of 100 feet at the time of the collision.

From the record it appears that the span was erected in accordance with state and federal law; that it was not required by law to carry warning devices or be otherwise marked and that low-level wires are not generally marked in the State of Washington.

In its memorandum decision the court stated:

"Assuming that the Coast Guard had the right to erect such an obstruction, it most certainly had no right to erect it in such a manner as to constitute a trap. The wires were extremely difficult to see and the supporting poles were inconspicuous because of their location and color, but at no time prior to or at the time of the accident were any warning devices installed upon the wires or upon the poles or otherwise to indicate the presence of the span. Furthermore, in 1957 or 1958 an aircraft of unknown identity collided with the span although miraculously there apparently was no substantial resulting damage. This fact, together with the history of aircraft activity in the area both before and after installation of the wires, should have put the Coast Guard on notice that the span was potentially dangerous to low flying aircraft.

The court finds that the Coast Guard in failing to install warning devices failed to exercise reasonable care to avoid unreasonable risk of harm to low flying aircraft and was thereby negligent; further, that such negligence was a proximate cause of the accident. The court does not believe, however, that the probability of such harm resulting was great enough to justify a finding that the Government's failure to act constituted wanton misconduct."

As to the conduct of El Paso the court, in its memorandum decision, stated:

"Death has sealed the pilot's lips. We know not what he did, but what

he did not do is deducible from the evidence and from the facts which the court may judicially know. The existence of the span was not indicated on any aeronautical chart. Indeed, wires of this type and elevation were not generally depicted on such charts. The fact that such terrain hazards were not so indicated made it imperative that he make inquiry of sources other than his charts.

\*　　\*　　\*　　\*　　\*　　\*

"The court is of the opinion that a prudent pilot contemplating a low level coastal flight of the nature herein involved and exercising the requisite care for his own safety would have made inquiry at the Port Angeles or Forks airports or of the Coast Guard at LaPush, at all of which established personnel were fully cognizant of the fatal hazard.
\*　\*　\*

"In view of Sec. 60.11 of the Civil Air Regulations, the court finds that the pilot's failure to adequately familiarize himself with the area to be overflown constituted contributory negligence per se and that such misconduct proximately contributed to the accident."

The court concluded that the pilot was not guilty of wanton misconduct.

The record, together with the rational inferences that may be drawn from it, provides ample support for the court's findings. Moreover, the fact that the pilot was operating the aircraft at an elevation of only one hundred feet when it was within two thousand feet of a congested area might well have compelled a finding of contributory negligence on the pilot's part. See § 60.17, Civil Air Regulations, 14 C.F.R. § 60.17 (1961 Ed.), now in substance 14 C.F.R. § 91.79 (1964 Ed.). The standards of care as fixed were not unreasonable. Accordingly we conclude that the District Court was not clearly erroneous.

On both appeals judgment affirmed.