**BLOUNT BROTHERS CORPORATION**
**and General Insurance Company**
**of America**

v.

**STATE OF LOUISIANA Through the**
**BOARD OF COMMISSION-**
**ERS, et al.**

**Civ. A. No. 68–21.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 14, 1971.

C. Edgar Cloutier, Christovich & Kearney, New Orleans, La., for plaintiffs.

Robert J. Young, Jr., Drury, Lozes, Young & Curry, New Orleans, La., for defendant State of La., through the Bd. of Commissioners, Orleans Levee Dist.

Gerald J. Gallinghouse, U. S. Atty., John R. Schupp, Asst. U. S. Atty., New Orleans, La., Philip Silverman, U. S. Dept. of Justice, Washington, D. C., for the United States.

HEEBE, District Judge:

Blount Brothers Corporation and General Insurance Company of America filed this action to recover damages to an airplane allegedly caused by the negligent performance by defendants of air traffic control operations.[1]

The case came on for trial without a jury on a previous day. The Court, having considered all the evidence and having studied all memoranda submitted, is now fully advised in the premises and makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. At all times relevant herein:

a. Plaintiff Blount Brothers Corporation was a corporation organized outside of Louisiana.

b. Plaintiff General Insurance Company of America was an insurance

---

1. Defendants raised an alternative theory that plaintiffs were not entitled to bring this lawsuit because Blount Brothers already had been reimbursed for all damages by General Insurance (and hence have suffered no real loss) while General Insurance never complied with the administrative requirements of the Federal Tort Claims Act in bringing a claim against the United States. Since we felt the evidence clearly disclosed the absence of any liability on the part of the defendants, we reached the merits without deciding the underlying procedural issues.

corporation organized outside of Louisiana.

c. Defendant Orleans Levee District owned and operated for public use the Lakefront Airport in New Orleans.

d. The United States, through the Federal Aviation Agency, provided air traffic control services at Lakefront Airport.

2. On February 11, 1967, a De-Havilland 125 type aircraft, bearing Registration No. N–142B and owned by Blount Brothers Corporation was flown from Montgomery, Alabama to New Orleans Lakefront Airport by Winton M. Blount and co-pilot James A. Perkins.

3. Upon arrival over New Orleans, the aircraft cancelled its instrument flight plan and approached the airport on a visual flight plan. The weather was clear and visibility was three to four miles.

4. The Air Traffic Control Tower at Moisant International Airport cleared the aircraft for landing on Runway 17 at Lakefront Airport and warned the aircraft that sea gulls were flying over the approach end of the runway. This warning was repeated by the Lakefront Tower during the craft's final approach.

5. Due to construction of an extension of Runway 17, there existed to the north of the approach end of the runway a mound of sand 800 feet wide and 1200 feet long. It was 7½ feet in height at the beginning of the surface of the runway. This sand had been placed there in 1965 as fill for the proposed extension, a procedure the Court finds reasonable under the circumstances.

6. On June 18, 1965, defendant Levee Board issued a NOTAM (Notice to Airmen) that there was a pile of sand located at the approach end of the runway that was 7 feet high, 1200 feet long and 800 feet wide. This NOTAM was publicized to the aviation public when the Federal Aviation Administration published the NOTAM in the Airmen's Information Manual.

7. On February 11, 1967, a NOTAM was still being published in the Airmen's Information Manual advising pilots that there was a pile of sand at the approach end of the runway, 7 feet high, 1200 feet long and 800 feet wide, and that the runway was displaced 528 feet to the south.

8. Blount Brothers Corporation subscribed to the Airmen's Information Manual, including the portion which set forth the NOTAMs. However, neither the pilot in command, Winton Blount, nor the co-pilot, James Perkins, consulted the NOTAMs in the Airmen's Information Manual before beginning the flight. If the NOTAM in the Airmen's Information Manual had been consulted, the pilot and co-pilot would have known about the pile of sand and the displaced runway on the approach to Runway 17 even though no warning of this condition was given by air traffic control as they approached the airport.

9. It was the custom and practice of the controllers to advise of new, temporary, variable or short-term conditions about which a pilot could not know without an advisory, but not about long-term conditions which had been publicized by NOTAM, such as the pile of sand and the displaced runway which had existed and was published one and one half years before this incident.

10. In landing jet aircraft such as N–142B, the pilot ordinarily rotates the aircraft to a nose-up position as it crosses the threshold of the runway about 25 feet high, which maneuver is called the "flare out."

11. The pilot will try "to land his aircraft on the numbers" which designate the runway and which are painted on the runway just past the threshold. At all times during the approach, the "numbers," i. e., 17, were visible to the crew of N–142B. In order to land on the "numbers," the pilot will "flare out" as he crosses the threshold of the runway and is over the "numbers."

12. On this approach, the pilot came in too low and "flared out" over the pile

of sand five to seven feet high and about 550 feet from the threshold of the runway instead of "flaring out" over the "numbers."

13. As a result of this maneuver, the aircraft hit the sand with its landing gear and sustained $76,739.25 worth of structural damage.

14. The Court finds that this accident could reasonably have been avoided if a) the pilot or co-pilot had consulted the NOTAMs and discovered the existence of the mound of sand and the fact that the runway had been displaced 528 feet to the south, or if b) the pilot had planned his approach to "flare out" over the clearly visible "numbers" on the runway.

15. The Court finds the omissions described in Finding No. 14 to be negligent conduct on the part of the pilot and co-pilot, which conduct is directly attributable to the plaintiffs, and further, that these negligent acts were the proximate cause of the accident.

16. The Court finds that the omission of the tower controller to advise the pilot about the displaced runway and the pile of sand was not negligence in view of the reasonable practice followed by the traffic controller of only advising pilots of recently changed conditions and relying on pilots to be aware of long-standing changes that are publicized in NOTAMs.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction to decide this claim arising under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

2. The pilot in command, Mr. Blount, was directly responsible for and the final authority as to the safe operation of N-142B. 14 CFR 91.3; Hartz v. United States, 387 F.2d 870 (5th Cir. 1968); Tilley v. United States, 375 F.2d 678 (4th Cir. 1967); United States v. Schultetus, 277 F.2d 322 (5th Cir.

1960), cert. den. 364 U.S. 828, 81 S.Ct. 67, 5 L.Ed.2d 56.

3. The pilot in command, Mr. Blount, before beginning the flight had a duty to familiarize himself with all available information concerning that flight, including information about the destination airport. 14 CFR 91.5; Black v. United States, 441 F.2d 741, (5th Cir. 1971); El Paso Natural Gas Co. v. United States, 343 F.2d 145 (9th Cir. 1965); Michelmore v. United States, 299 F.Supp. 1116 (C.D.Cal.1969).

4. The failure of the pilot in command Mr. Blount to consult the NOTAMs in the Airmen's Information Manual was a violation of Federal Air Regulations, 14 CFR 91.5; Gatenby v. Altoona Aviation Corp., 407 F.2d 443, 446–447 (3rd Cir. 1968).

5. The pilot, Mr. Blount, failed to exercise reasonable care in not consulting the NOTAMs at any time before the accident and in not planning his approach so as to "flare out" over the "numbers" which maneuver would have landed him safely on the runway.

6. This negligence was the proximate cause of the accident.

7. In an action under the Federal Tort Claims Act, we must apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). In Louisiana, the plaintiff must prove by a preponderance of the evidence that the defendant was negligent. See, e. g., Sullins v. City of Shreveport, 229 So.2d 390 (La.App. 1969). Here, plaintiff has failed to prove any negligence on the part of the defendants and cannot recover.

8. The defendants Orleans Levee District and United States of America are entitled to judgment in all respects against plaintiffs Blount Brothers Corporation and General Insurance Company, together with their costs.

Let judgment be entered accordingly.