Sheila SEWELL, individually and on behalf of Chad Edward Sewell, Cory Everett Sewell and Christi Lea Sewell, Plaintiffs–Appellants,

v.

PUBLIC SERVICE COMPANY OF COLORADO, Defendant–Appellee.

No. 90CA0563.

Colorado Court of Appeals, Division III.

Nov. 21, 1991.

Rehearing Denied Dec. 19, 1991.

Certiorari Denied July 7, 1992.

Schaden, Lampert and Lampert, Bruce A. Lampert, Patricia M. Jarzobski, Denver, for plaintiffs-appellants.

Kelly, Stansfield & O'Donnell, Timothy J. Flanagan, William L. Sasz, Denver, for defendant-appellee.

Opinion by Judge CRISWELL.

Plaintiff, Sheila Sewell, on behalf of herself and her children, instituted an action for the alleged wrongful death of her husband against defendant, Public Service Company of Colorado (PSC). The claim was based on her assertion that PSC was negligent in not giving warning of the existence of certain power transmission lines with which the private aircraft in which her husband was a passenger collided. The trial court, concluding that the circumstances demonstrated that PSC owed no duty of due care to plaintiff's decedent, granted PSC's motion for summary judgment. From that judgment plaintiff appeals, and we reverse.

The aircraft accident that resulted in the death of plaintiff's husband occurred at a point about one-half mile west of the developed portion of Red Cliff, Colorado. At that location the Eagle river has formed a canyon at the bottom of which there is both a railroad line and a highway.

Spanning this canyon is a motor bridge. The floor of this bridge is approximately 200 feet above the floor of the canyon.

This bridge is west of power transmission lines, consisting of three conductors, which were originally installed by PSC in the late 1920's or early 1930's. The lines cross the canyon at an oblique angle to, and at a substantially higher elevation than, the more westerly motor bridge. None of these three lines had colored balls or other markings to warn of their existence at the time of the accident.

There may exist some dispute as to the exact elevation of these lines and their length between the two towers, one on each side of the canyon, to which they are attached, as of the date of the accident. Shortly after the collision with these transmission lines, PSC's supervisor of the repair work estimated that the lines, at their highest point, were 500 feet above the floor of the canyon and that the span between the two towers was about 2000 feet. He insisted that, in repairing the three lines, each of which had been severed in the accident, his crew used approximately 6000 feet of wire. In a survey conducted some-time later, however, PSC estimated that the highest point of the lines had been some 425 above the floor of the canyon and that they had spanned a total of only 969 feet between the two towers.

This post-accident survey also estimated that the transmission lines were in excess of 400 feet from the motor bridge at their nearest point (considering both horizontal and vertical distance). Because the bridge and the lines exist at an angle, each to the other, the reasonable inference is that the lines, for most of their span over the canyon, were considerably further than 400 feet from the bridge.

On the late afternoon of the day of the accident, two witnesses observed the aircraft as it flew in a general westerly direction over the residential area of Red Cliff and along the canyon toward the bridge and the sun. Both these witnesses estimated its altitude, as it passed over or near this residential area, as between 600 and 900 feet (200 to 300 yards) above ground level. As it flew toward the bridge, they say that it began to climb, and then it turned, dived, and crashed. Neither realized at the time that it had struck PSC's transmission lines before crashing.

In asking the trial court to enter summary judgment in its favor, PSC relied, among other things, upon two regulations promulgated by the Federal Aviation Administration (FAA), found at 14 C.F.R. § 91.119(b) and (c) (1991), which regulate the height of aircraft in flight. The first regulation requires aircraft to maintain an altitude of 1,000 feet above the highest obstacle when flying "over any congested area of a city, town, or settlement." The second requirement is that, even in "sparsely populated areas," an aircraft "may not be operated closer than 500 feet to any ... structure."

After demonstrating that the motor bridge and its transmission lines were within the corporate limits of Red Cliff, and relying upon the information summarized above, PSC argued that it could not reasonably foresee that any aircraft would be flown westerly up the canyon from Red Cliff in the manner in which the decedent's

aircraft was being flown. Thus, it concluded that, no harm to a third party being reasonably foreseeable from its failure to place warnings upon or near these lines, it was under no duty to do so. And, in support of this conclusion, it presented the opinion of an experienced pilot that the aircraft was being operated in a reckless manner and the opinion of an FAA administrator that the FAA regulations did not require PSC's lines to be marked.

To counter this argument, plaintiff first asserted that the evidence as to the elevation of PSC's transmission lines was fairly disputed and that, if the lines were 500 feet or more above the elevation of the canyon, another FAA regulation, 14 C.F.R. § 77.-23(a)(1) (1991), would require the lines to be considered to be "an obstruction to air navigation." Further, she noted that, in any case, in an advisory circular issued in October 1985 (just a few months before the accident) the FAA recommended, but did not require, that any object which extended 200 feet above ground level should be marked. Likewise, plaintiff referred to a recommendation of the National Transportation Safety Board that transmission lines 200 feet or more above ground level, or any such lines crossing canyons (irrespective of their elevation), should be marked.

Next, plaintiff presented statistical evidence that, between January 1, 1983, and "mid–1988," there were 516 occasions in the United States when aircraft struck transmission lines, resulting in some 231 fatalities. Of these 516 incidents, 495, or 96%, involved collisions with unmarked lines.

Plaintiff also noted that PSC had placed marker balls on numerous of its lines in other locations. As an example, she presented copies of use permits issued by the United States Forest Service authorizing PSC to construct transmission lines in two national forests, but requiring such lines to be marked wherever they were 150 feet or more above "mean ground level."

Finally, plaintiff sought, through written interrogatories, to determine the number and nature of any accidents involving aircraft and transmission lines, occurring be-fore the accident in question, of which PSC was aware. PSC, however, objected to providing such information because, it alleged, such information might involve incidents insufficiently similar to the circumstances surrounding the instant accident that evidence relating thereto would not be admissible. Hence, it averred that such information was irrelevant.

Plaintiffs sought an order compelling PSC to disclose such information. The trial court denied such discovery to them and, in doing so, rested its decision solely upon relevancy grounds.

After considering the foregoing factual materials, the court concluded that PSC had no duty to mark its transmission lines and, therefore, entered judgment for PSC. In comments made at the time that it initially announced this decision, the court noted that, except in instances involving the liability of manufacturers or sellers of defective products, no person is required to foresee that another person will be negligent or otherwise act in violation of the law. It concluded that, since the evidence here conclusively demonstrated that the aircraft was flying recklessly at the time that it struck PSC's wires, PSC could not reasonably foresee such actions on behalf of any pilot. Hence, it held that PSC had no duty under the factual circumstances portrayed to mark, or otherwise to give warning of, these lines.

## I.

As a threshold issue, we must first determine what standard a court is to apply in passing upon a motion under C.R.C.P. 56 for the entry of summary judgment in a negligence action, if such motion is based upon the assertion that defendant owed to plaintiff no legal duty of due care because the resultant harm was unforeseeable.

■ Generally, when presented with a summary judgment issue, a court must decline to enter such a judgment if there exists a genuine dispute over any material fact. C.R.C.P. 56(h); *Abrahamsen v. Mountain States Telephone & Telegraph Co.,* 177 Colo. 422, 494 P.2d 1287 (1972).

■ However, commencing with its decision in *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1981), our supreme court has made clear that whether an actor owes a duty of due care to another is a question of law for resolution by the court. *Observatory Corp. v. Daly,* 780 P.2d 462 (Colo.1989); *Perreira v. State of Colorado,* 768 P.2d 1198 (Colo.1989); *Taco Bell, Inc. v. Lannon,* 744 P.2d 43 (Colo. 1987).

In considering this question, the court must weigh various factors. One factor that must be considered, and one which may play a "prominent role" in its resolution, is whether it was reasonably foreseeable that harm to plaintiff might result from defendant's act or inaction. *Observatory Corp. v. Daly, supra.*

Historically, the Colorado appellate opinions respecting the manner in which the question of the foreseeability of harm to a plaintiff from a defendant's act or inaction was to be considered have not been uniform.

Many opinions have suggested that whether the harm was foreseeable is a matter to be considered by the fact finder in determining whether such act or omission constituted the proximate, or legal, cause of plaintiff's damage. *See Ekberg v. Greene,* 196 Colo. 494, 588 P.2d 375 (Colo. 1978); *Samuelson v. Chutich,* 187 Colo. 155, 529 P.2d 631 (1974); *Moore v. Standard Paint & Glass Co.,* 145 Colo. 151, 358 P.2d 33 (1960); *Buchholz v. Union Pacific R.R. Co.,* 135 Colo. 331, 311 P.2d 717 (1957); *Aikens v. George W. Clayton Trust Commission,* 132 Colo. 374, 288 P.2d 349 (1955); *Smith v. State Compensation Insurance Fund,* 749 P.2d 462 (Colo.App.1987); *Estate of Newton v. McNew,* 698 P.2d 835 (Colo.App.1984); *Wesley v. United Services Automobile Ass'n,* 694 P.2d 855 (Colo.App. 1984). *See also 1 COLJI–Civ.3d* 9:29, 9:30 (1989).

In other instances, some cases have suggested that the question of the foreseeability of harm is a factor to consider in determining whether defendant's act or omission constituted negligence. *See Webb v. Dessert Seed Co.,* 718 P.2d 1057 (Colo.1986);

*City & County of Denver v. Stanley Aviation Corp.,* 143 Colo. 182, 352 P.2d 291 (1960).

And, in least two opinions, this court, without relying upon *Metropolitan Gas Repair Service,* independently concluded that the element of foreseeability is a factor to consider in determining whether defendant owed any duty of due care. *See Bartley v. Floyd,* 695 P.2d 781 (Colo.App. 1984), *aff'd,* 727 P.2d 1109 (Colo.1986); *Leppke v. Segura,* 632 P.2d 1057 (Colo. App.1981).

Nevertheless, whatever the context within which the question is to be considered, the prior uniform view has been that, if subject to reasonable dispute, the question of foreseeability is to be resolved by the fact finder. *See Webb v. Dessert Seed Co., supra* (considered in context of negligence); *Ekberg v. Greene, supra* (proximate cause); *Bartley v. Floyd, supra* (duty).

However, in *Metropolitan Gas Service, Inc. v. Kulik, supra,* the supreme court, referring to "the analytical difficulties in treating foreseeability as an element of causation, rather than as an element of duty," declared that the factor of foreseeability of harm resulting from the defendant's act or inaction was one to be considered by the court in passing upon the legal question of the existence of a duty of due care (at least in the absence of any "unforeseen plaintiff" issue).

Consistent with this formulation, in *Metropolitan Gas Service, Taco Bell,* and *Perreira v. State of Colorado, supra,* the court itself considered the evidence of the foreseeability of the particular harm that resulted and determined, in each case, that a duty of due care existed. And, it reached this conclusion without noting, in any of the three opinions, that it considered the evidence to have established that the particular harm was foreseeable, as a matter of law.

■ A review of these recent supreme court opinions, therefore, confirms that the question of the existence of a duty of due care is one for the court and that the

foreseeability of the risk is an important factor to consider in deciding this legal issue. What is not determined in these cases, however, is whether, in considering the foreseeability factor in the context of the legal issue of duty, the court itself should make a factual determination of the foreseeability issue or whether, if the question of foreseeability is subject to differing reasonable inferences, it should be left for the jury to determine under appropriate instructions.

If the court is to act as a fact finder upon this question, then summary judgment might be appropriate even in the face of countervailing factual inferences, so long as there is record support for the court's finding. If, on the other hand, a jury is to determine whether the risk of harm was reasonably foreseeable, it is only if but a single inference can be drawn from the evidentiary facts that summary judgment based upon the existence or non-existence of a legal duty would be proper. *See Bartley v. Floyd, supra* (involving an "unforeseen plaintiff").

■ We conclude that, as in other cases, if differing factual inferences may be drawn from the evidence, the question of foreseeability remains a disputed factual issue, and the entry of summary judgment in such circumstances is improper.

We reach this conclusion for two reasons.

First, however inconsistent the pre-*Metropolitan Gas Repair Service, Inc.* jurisprudence might appear to be with respect to the context within which the factor of foreseeability is to be considered, all of it recognized that the issue was one for the fact finder, unless all of the facts and factual inferences are undisputed. And, while *Metropolitan Gas Repair Service, Inc.* and its progeny may have changed the context within which the factor of foreseeability is to be considered, nothing within any of those opinions suggests that a change was to be made in this basic premise.

Second, the courts in other jurisdictions which have concluded, as our supreme court has concluded, that the factor of fore-seeability is to be considered within the context of the question of the existence of a duty, have also concluded that differing reasonable inferences upon the question of foreseeability create an issue for the finder of fact. *See Smith v. Tennessee Valley Authority*, 699 F.2d 1043 (11th Cir.1983) (applying Tennessee law); *Arizona Public Service Co. v. Brittain*, 107 Ariz. 278, 486 P.2d 176 (1971); *Elbert v. City of Saginaw*, 363 Mich. 463, 109 N.W.2d 879 (1961). Indeed, in the seminal case of *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928), which involved an "unforeseen plaintiff," Judge Cardozo wrote that: "The range of reasonable apprehension is ... if varying inferences are possible, a question for the jury."

We conclude, therefore, that a motion for summary judgment based upon an assertion of the lack of existence of a duty of due care is to be subjected to the same standard as is any other motion for summary judgment. Hence, if the record evidence is insufficient to allow the court to determine the question of foreseeability as a matter of law, such motion must be denied.

## II.

■ Having concluded that the grant of summary judgment is improper if differing reasonable inferences may be drawn respecting the foreseeability of harm resulting from an actor's act or inaction, we also conclude that the record here is insufficient to allow any conclusion to be drawn as a matter of law as to whether a reasonable person could foresee that harm could result under circumstances similar to those disclosed by this record.

## A.

The trial court's grant of summary judgment in this case was influenced by its conclusion that, with the possible exception of instances involving manufacturers and distributors of allegedly defective products, no person is required to foresee and anticipate that another will violate the law. This was a faulty major premise.

■ In *Taco Bell, Inc. v. Lannon, supra,* the supreme court noted that the criminality of the act does not, by that fact alone, render such act unforeseeable. Rather, citing 3 F. Harper, F. James, A.O. Gray, *The Law of Torts* § 18.2 (2d ed. 1986), it concluded that a legally foreseeable act "includes whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct." Further, "simply because something has not yet happened does not mean that its happening is unforeseeable."

Likewise, in *Perreira v. State of Colorado, supra,* the court held that the defendant could have reasonably foreseen the criminally violent act of another and, therefore, that there existed a duty to use due care to prevent harm from such acts. *See also Ekberg v. Greene, supra* (criminal act of third party is not an intervening cause if reasonably foreseeable).

### B.

In addition, although the affidavit of defendant's expert characterized the pilot's actions as "reckless," the information in the present record does not establish, as a matter of law, that the aircraft was in violation of any FAA regulation at the time of its collision with defendant's transmission lines.

The two eyewitnesses estimated the aircraft's altitude at less than 1000 feet as it passed over the settled portion of Red Cliff. At that point, the aircraft was presumably in violation of the regulation requiring an altitude of 1000 feet or more "over any congested area." However, our review of this record leads us to conclude that the geographical point over which the collision occurred was not "congested" within any common meaning of that term. It was at a point nearly one-half mile from the developed portion of Red Cliff. Absent some persuasive authority that this regulation carries some other meaning (and we have been presented with none), we cannot conclude, as a matter of law, that the aircraft was in violation of this regulation at the point of collision.

Further, if the "congested area" regulation did not apply at the point over which the collision occurred, the applicable regulation requires only that any aircraft be flown 500 feet or more from any "structure." Yet, even if the dispute as to the height and span of the lines were to be disregarded, since the closest point between the bridge (the only pertinent "structure") and the transmission lines was approximately 400 feet, it is reasonably inferable that the aircraft was more than 500 feet from the bridge at its point of collision with those lines.

### C.

Finally, the court erred in refusing, on relevancy grounds, to compel PSC to disclose the nature of its knowledge of prior aircraft collisions with transmission lines before it passed upon the summary judgment motion. *See* C.R.C.P. 26(b)(1) (information discoverable if it may lead to admissible evidence). While we may assume that none of those prior collisions were circumstantially identical to this collision, that fact does not render the information sought undiscoverable on a pre-trial basis.

■ Information may be "relevant" for purposes of discovery, although not admissible at trial. *Lucas v. District Court,* 140 Colo. 510, 345 P.2d 1064 (1959). Therefore, the scope of discovery is "very broad." *Kerwin v. District Court,* 649 P.2d 1086 (Colo.1982).

■ Thus, if one of the issues is the knowledge or intent of a defendant, information respecting prior incidents, even those not involving the plaintiff, may be relevant for discovery purposes. *See Laufman v. Oakley Building & Loan Co.,* 72 F.R.D. 116 (S.D.Ohio 1976) (information upon other loan applications discoverable in suit asserting that plaintiff's loan application was denied on racial grounds).

■ Here, defendant's assertion that it owed no duty to decedent because the pilot's actions were unforeseeable was based, at least in part, on its claim that the aircraft was flying in violation of regulations.

That assertion would lose much of its force, however, if it could be demonstrated that many aircraft-transmission lines collisions have occurred under circumstances in which the aircraft was operating in violation of flight regulations. And, if PSC was aware of such prior incidents, such knowledge might well play a major role in the determination whether it should have foreseen a collision similar to that which occurred here.

Under such circumstances, the fact that there had been no previous collision with these lines would not be determinative. *See Taco Bell v. Lannon, supra,* (prior incidents in neighborhood, although not at defendant's premises, considered in determining foreseeability of criminal assault).

Hence, plaintiff's request was for relevant information, and she must be allowed to discover the extent of PSC's knowledge of prior aircraft collisions with transmission lines and of the circumstances surrounding those collisions. Of course, the trial court may place reasonable restrictions upon these discovery demands, at least with respect to a reasonable time frame, if the absence of such restrictions would result in unnecessary annoyance, embarrassment, oppression, or undue burden or expense to PSC. *See* C.R.C.P. 26(c).

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

TURSI and PLANK, JJ., concur.