Mary E. LEE, Individually and as Personal Representative of the Estate of Ricky L. Lee, Appellant,

v.

FARMER'S RURAL ELECTRIC COOPERATIVE CORPORATION, Appellee.

No. 2006–CA–001641–MR.

Court of Appeals of Kentucky.

Oct. 19, 2007.

Douglas P. Desjardins, Michael B. Ely, Washington, DC, Joseph B. Venters, Daniel J. Venters, Somerset, for appellant.

Donald P. Moloney, II, Bryan H. Beauman, Lexington, for appellee.

Before: DIXON and VANMETER, Judges; GRAVES,[1] Senior Judge.

## OPINION

DIXON, Judge.

Appellant, Mary Lee, appeals from an order of the Barren Circuit Court granting summary judgment in favor of Appellee,

---

1. Senior Judge J. William Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Farmer's Rural Electric Cooperative Corporation ("FRECC"), in this wrongful death action. Because we conclude that the trial court erred in finding that no duty existed as a matter of law, we reverse and remand the matter for further proceedings.

On October 16, 2003, Ricky Lee accompanied Stanley Thompson on a local flight aboard a Cessna aircraft that departed the Vine Grove Airport in Hardin County, Kentucky. The two men took off from the airport around 5:00 p.m. and proceeded toward Nolin River Lake in Grayson County. While flying over one of the river channels, Thompson's plane struck an unmarked power line owned by FRECC that stretched across the channel. The plane crashed into the water and both men drowned.

Ricky Lee's widow and Appellant herein, Mary Lee, filed a negligence action in the Barren Circuit Court alleging that FRECC was liable for the accident because it failed to mark the power line in question. Appellant's complaint asserted that FRECC was under a duty to mark the line because it was aware or should have been aware (1) of the hazard posed by unmarked electrical lines; (2) that there had been another crash involving an electrical line over Nolin Lake; and (3) that aircraft frequently fly over the lake. Following discovery, FRECC filed a motion for summary judgment claiming that it was under no statutory or common law duty to mark its lines. The trial court agreed and granted the motion. This appeal ensued.

The standard of review on appeal when a trial court grants a motion for summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. CR 56. The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991). Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue de novo. *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky.App.2001) (citations in footnotes omitted).

Appellant argues that the trial court erred in granting summary judgment in favor of FRECC because a jury could have reasonably concluded that Lee died as a result of FRECC's negligence. She contends that FRECC was aware of the danger that its unmarked power line posed, was aware of a previous crash over Nolin Lake where a helicopter collided with another utility's power line, and knew that planes often flew over the lake. Appellant presented evidence that the wire Thompson's plane collided with was a single residential power line that was less than 1/4 inch in diameter. The line extended 870 feet across the lake at a height of approximately 85 feet above the water. Further, the supporting structures on either side of the lake were concealed by trees and vegetation. Thus, Appellant concludes that an accident, such as occurred herein, was foreseeable. FRECC counters that it was under no statutory or common law duty to mark its power line and that Thompson's violation of FAA regulations was the proximate cause of Lee's death.

To recover under a claim of negligence in Kentucky, a plaintiff must establish that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant

breached its duty, and (3) the breach proximately caused the plaintiff's damages. *See Mullins v. Commonwealth Life Insurance Co.*, 839 S.W.2d 245 (Ky.1992). Whether the defendant owed a duty is a question of law for the court to decide. *Id.; Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky.2003). Whether the defendant breached its duty is generally a question of fact for the jury. *See Pathways*, 113 S.W.3d at 89. The Kentucky Supreme Court has noted that the duty analysis is "essentially ... a policy determination[,]" *Mullins, supra* at 248, and "is but a conclusion of whether a plaintiff's interests are entitled to legal protection against the defendant's conduct." *Sheehan v. United Services Automobile Association*, 913 S.W.2d 4, 6 (Ky.App.1996).

 Kentucky courts recognize a "universal duty" of care under which "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky.1987). In general, due to the dangerous nature of electricity, an electric utility company is chargeable with the highest degree of care to protect all persons in all places they have a right to be. *Lambert v. Franklin Real Estate Company*, 37 S.W.3d 770 (Ky.App.2000); *see also Kentucky Power Company v. Carter*, 321 S.W.2d 410, 413 (Ky.1959). "In constructing and maintaining electrical lines the highest degree of caution must be exercised for the protection of all persons at places where they have a right to go, because in dealing with so deadly an instrumentality the highest degree of care and skill known in the conduct of such business to prevent injury to such persons is required." *Vaught's Adm'x v. Kentucky Utilities Co.*, 296 S.W.2d 459, 461 (Ky. 1956). However, we are of the opinion that while the highest standard of care may be appropriately imposed in an action for injuries by electrical shock, because the circumstances of accident herein did not involve the inherently dangerous properties of electricity, the proper standard of care is ordinary care. *Lopez v. Three Rivers Electric Cooperative, Inc.*, 26 S.W.3d 151, 158 (Mo. Banc.2000). *See also Florida Power and Light Co. v. Lively*, 465 So.2d 1270, 1276, n. 5 (Fla.Dist.Ct.App. 1985).

 In Kentucky, the scope and character of a defendant's duty is largely defined by the foreseeability of the injury: "[E]very person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury. Even so, such a duty applies *only* if the injury is foreseeable." *Isaacs v. Smith*, 5 S.W.3d 500, 502 (Ky.1999) (citations and quotation marks omitted) (emphasis added). "[F]oreseeability is to be determined by viewing the facts as they reasonably appeared to the party charged with negligence, not as they appear based on hindsight." *James v. Wilson*, 95 S.W.3d 875, 891 (Ky.App.2002).

 Foreseeability inquiries are often complicated by the tendency to confuse foreseeability and proximate cause. Whether a harm was foreseeable in the context of determining duty depends on the general foreseeability of such harm, not whether the specific mechanism of the harm could be foreseen. *See, e.g., Bolus v. Martin L. Adams & Son*, 438 S.W.2d 79, 81 (Ky.1969) ("It is not necessary, to impose liability for negligence, that the defendant should have been able to anticipate the precise injury sustained, or to foresee the particular consequences or injury that resulted. It is enough that injury of some kind to some person could have been foreseen."); *Eaton v. Louisville & N.R. Co.*, 259 S.W.2d 29 (Ky.1953) (precise form of

injury need not be foreseen). In determining whether an injury was foreseeable, we look to whether a reasonable person in a defendant's position would recognize undue risk to another, not whether a reasonable person recognized the specific risk to the injured party. In *Pathways, Inc. v. Hammons, supra,* our Supreme Court held:

> Foreseeable risks are determined in part on what the defendant knew at the time of the alleged negligence. "The actor is required to recognize that his conduct involves a risk of causing an invasion of another's interest if a reasonable man would do so while exercising such attention, perception of the circumstances, memory, *knowledge of other pertinent matters,* intelligence, and judgment as a reasonable man would have." Restatement (Second) of Torts § 289(a) (emphasis added); *see also Mitchell v. Hadl,* Ky., 816 S.W.2d 183, 186 (1991). (Holding that liability for negligence is based on what the defendant was aware of at the time of the alleged negligent act and not on what the defendant should have known in hindsight.) The term "knowledge of pertinent matters" is explained by Restatement (Second) of Torts § 290, which states:
>
> > For the purpose of determining whether the actor should recognize that his conduct involves a risk, he is required to know (a) the qualities and habits of human beings and animals and the qualities, characteristics, and capacities of things and forces in so far as they are matters of common knowledge at the time and in the community; and (b) the common law, *leg-islative enactments,* and general customs in so far as they are likely to affect the conduct of the other or third persons.

*Pathways, supra,* at 90.

Turning to the case herein, Appellant concedes that FRECC was under no statutory duty to mark the power line in question.[2] Further, both parties acknowledge that Kentucky has not previously addressed the issue of whether a utility has a common law duty to mark its power lines under these circumstances. We note that other jurisdictions are split on the issue. *See* Randy J. Sutton, *Liability of Owner of Wires, Poles, or Structures Struck by Aircraft for Resulting Injury or Damage,* 49 ALR 5th 659 (2005).

FRECC cites to a line of cases holding that an owner of power lines will not be held liable when its lines do not violate laws or regulations; there has been no notice of prior, similar accidents involving the lines; and the lines, as constructed, do not create an unreasonable risk of harm. For example, in *Poelstra v. Basin Electric Power Cooperative,* 545 N.W.2d 823 (S.D. 1996), a helicopter crashed while flying over an electrical substation when it collided with power lines owned by Basin Electric. In affirming the trial court, the South Dakota Court of Appeals adopted the test set forth in *Florida Power and Light Company v. Lively,* 465 So.2d 1270 (Fla.Dist.Ct.App.1985), and held that Basin Electric owed no duty of care to Poelstra because the height and location of the power lines did not violate the law; there was no evidence of prior accidents of a similar kind involving Basin Electric's

---

2. FAA regulations require all power lines 500 feet above the ground to be marked. 14 C.F.R. § 77.23(a)(1) (2000). Structures over 200 feet above ground level are considered obstacles to air navigation if they are within three nautical miles of an airport whose longest runway is more than 3,200 feet, and may be required to be marked. 14 C.F.R. § 77.23(a)(2) (2000).

lines; and Basin Electric "could not reasonably anticipate that air patrols would be conducted in such an area." *Id.* at 828. Thus, the accident was not foreseeable to Basin Electric and it had no duty to mark its lines.

Similarly, in *Baine v. Oklahoma Gas and Electric Company*, 850 P.2d 346 (Okla. Ct.App.1992), an accident occurred when a small aircraft struck transmission wires located 180 feet above a four-lane highway. The Oklahoma Court of Appeals also adopted the holding and reasoning of *Lively*, in finding that utilities have no duty to anticipate every circumstance that might cause injurious contact with their power lines. *See also Lea v. Baumann Surgical Supplies Inc.*, 321 So.2d 844 (La.Ct.App. 1975).

In *Gunn v. Edison Sault Electric Company*, 24 Mich.App. 43, 179 N.W.2d 680, 682 (Mich.Ct.App.1970), a seaplane, while attempting to land, struck a utility's transmission wires that were located at an altitude of 38 feet over a channel between the mainland and an island. The court therein held that the utility had no common law duty to mark the power line because it was not foreseeable that a plane would be flying at such a low altitude in a known "non-approach" area for seaplanes. The Michigan court noted:

> [T]he law is complied with when an electric or telephone company or others engaged in the transmission or use of electricity provide such a protection as will safely guard against any contingency that is reasonably to be anticipated. The extent of the duty or standard of care is measured in the terms of foreseeability of injury from the situation created. There is no duty to safeguard against occurrences that cannot be reasonably expected or contemplated. A failure to anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances is not negligence, nor does the law require those maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those lines.

*Id.* at 682.

Appellant, on the other hand, asserts that the cases surveyed in Randy J. Sutton's ALR article, *Liability of Owner of Wires, Poles, or Structures Struck by Aircraft for Resulting Injury or Damage, supra*, that were decided after 1975 have held there is a duty to mark power lines over open water. In *Lopez v. Three Rivers Electric Cooperative, supra*, the Missouri Supreme Court held that evidence established that the utility company knew or should have known of a risk of harm to pilots sufficiently probable to create a duty. *Id.* at 157. Therein, a helicopter crashed after flying into unmarked power lines over the Osage River in Missouri. The power lines at the accident site were three-eighths of an inch in diameter and crossed a 939–foot span over the river at a height of about 100 feet above the water. Trees and vegetation obstructed the view of the supporting structures. It was undisputed that although the lines were unmarked, they did not violate FAA regulations.

In holding the utility company liable, the *Lopez* court noted that the company was not only aware of a similar accident involving a fixed-wing aircraft at the same location on the river, but was on notice that civilian and military aircraft often flew at low altitudes in the vicinity of their power lines. Thus, it was foreseeable that the unmarked power lines would result in an accident.

Missouri again addressed the issue of a utility company's duty to mark its lines in *Hosto v. Union Electric Company*, 51

S.W.3d 133 (Mo.Ct.App.2001), wherein a helicopter crashed after hitting power lines spanning 1,300 feet over the Mississippi River at a height of 105 feet above the surface. As in the *Lopez* case, the lines were virtually "invisible," and the supporting structures set back into the trees. In holding that the utility "should have been aware with the exercise of reasonable diligence that [the] power lines presented a risk to aviators[,]" the court noted:

> When viewing the several photographs of the power lines exhibited by both parties, several witnesses testified the lines were difficult to see, if not impossible, in some instances. These power lines were located above a popular gathering place for boaters and swimmers. As many as 10,000 boaters pass under these power lines on an average summer weekend. We believe, as the trial judge found, it was foreseeable that a boater would be injured in the area below the lines and would need emergency assistance. Since there is limited access by road and no hospital in the area, it was foreseeable an air rescue would be necessary.

*Id.* at 140–141.

One of the earliest cases to recognize the danger posed by unmarked power lines is *Yoffee v. Pennsylvania Power & Light Company*, 385 Pa. 520, 123 A.2d 636 (1956). Citing to evidence that the power lines were made of a material which blended in with the environment and the supporting structures were concealed by vegetation, and that rivers are often used as navigational courses for pilots, the court found that the question of whether the utility maintained its line with due regard for the safety of others should have been submitted to the jury. The *Yoffee* court noted that the utility was on constructive notice that its lines posed a risk since there was evidence of a previous wire strike by an aircraft at the same location.

Admittedly, there are distinctions in all of these cases from the case herein. With the exception of the *Gunn* decision, none of the cases relied on by FRECC involved an accident that occurred over water, and thus there was no discussion of the effects of such on a pilot's visibility to see the lines or supporting structures. Further, many of the decisions, including *Lopez* and *Poelstra*, involved collisions between helicopters and power lines. As FRECC points out, unlike fixed-wing aircraft, there is no minimum altitude for helicopters, which are only required to fly "without hazard to persons or property on the surface." 14 C.F.R. § 91.119(d). Finally, several of the cases relied heavily on evidence that prior accidents had occurred at the same locations. However, as aptly observed by the Missouri Court of Appeals, "it would be a tragedy ... to say utility companies in this situation get one 'free bite' before their duty to act against an unreasonable, foreseeable risk would arise." *Hosto, supra,* at 140.

A troubling aspect of this case is FRECC's assertion that it had no duty because it was not foreseeable that Thompson would violate FAA regulations by flying his plane so low over the lake. While the trial court did not explicitly comment on such, it is reasonable to infer that it too was persuaded by Thompson's actions. However, 14 C.F.R § 91.119,[3] provides in relevant part:

> Except when necessary for takeoff or landing, no person may operate an aircraft below the following altitudes:
>
> . . . .

---

**3.** At the time of the proceedings below, this section was codified as 14 C.F.R § 91.79(c).

(c) Over other than congested areas. An altitude of 500 feet above the surface, except over open water or sparsely populated areas. In those cases, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

The record herein is void of any determination whether Nolin Lake is considered "open water" and/or "sparsely populated." Indeed, during oral arguments counsel for both parties conceded that there does not appear to be a legal definition for either term, although counsel for Appellant commented that in the aviation field "open water" generally refers to anywhere a float plane can land. Regardless, although no one disputes that Thompson was flying below 500 feet at the time of the accident, FRECC's claim that he was in violation of the regulations is, at best, premature. And, if Thompson was not, in fact, flying in violation of FAA regulations, then it could certainly be more foreseeable that a plane would fly at a low altitude over Nolin Lake. As stated by the Tenth Circuit Court of Appeals in *Shute v. Moon Lake Electric Association, Inc.*, 899 F.2d 999, 1003 (10th Cir.1990), "[a]ircraft are now used at widely varying altitudes for numerous purposes, such as wildlife and geological surveying, scouting, and recreational sightseeing."

There does not seem to be any genuine dispute that the FRECC line and supporting structures were not visible to aircraft. Thus, the question remains whether or not it was foreseeable that an aircraft would fly at a low altitude over Nolin Lake and, if so, whether FRECC knew or should have known that its unmarked lines posed a risk of harm. Admittedly, given the questions regarding the interpretation of the applicable regulations, we find a foreseeability determination in this case an arduous task. We would observe that several other jurisdictions when confronted with conflicting evidence, have submitted the question of foreseeability, even in the context of determining whether a duty existed, to the jury.

The Colorado Court of Appeals was presented with a similar situation in *Sewell v. Public Service Company of Colorado*, 832 P.2d 994 (Colo.Ct.App.1991), wherein a wrongful death action was brought against a utility company after a plane collided with unmarked transmission lines that spanned a canyon in the Eagle River. The court noted that there was a genuine dispute as to whether the pilot's actions violated FAA regulations because it was unclear whether the geographical point over which the collision occurred was a "congested area" within the meaning of the applicable regulation. In reversing the trial court's summary judgment in favor of the utility company on the grounds that there was no duty, the appellate court held that, "if differing factual inferences may be drawn from the evidence, the question of foreseeability remains a disputed factual issue, and the entry of summary judgment in such circumstances is improper." *Id.* at 998.

[T]he courts in other jurisdictions which have concluded, as our supreme court has concluded, that the factor of foreseeability is to be considered within the context of the question of the existence of a duty, have also concluded that differing reasonable inferences upon the question of foreseeability create an issue for the finder of fact. *See Smith v. Tennessee Valley Authority*, 699 F.2d 1043 (11th Cir.1983) (applying Tennessee law); *Arizona Public Service Co. v. Brittain*, 107 Ariz. 278, 486 P.2d 176 (1971); *Elbert v. City of Saginaw*, 363 Mich. 463, 109 N.W.2d 879 (1961). Indeed, in the seminal case of *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928), which

involved an "unforeseen plaintiff," Judge Cardozo wrote that: "The range of reasonable apprehension is ... if varying inferences are possible, a question for the jury."

We conclude, therefore, that a motion for summary judgment based upon an assertion of the lack of existence of a duty of due care is to be subjected to the same standard as is any other motion for summary judgment. Hence, if the record evidence is insufficient to allow the court to determine the question of foreseeability as a matter of law, such motion must be denied.

*Sewell, supra.*

Similarly, in *Weber v. Southwestern Bell Telephone Company*, 209 Kan. 273, 497 P.2d 118 (1972), plaintiffs brought an action against a telephone utility company for injuries sustained when an aircraft's landing gear struck utility wires located on property across from an airstrip. In reversing the lower court's summary judgment in favor of the utility, the Kansas Supreme Court noted:

> There remains the question whether Bell had a duty in this case, as a matter of law, to mark the lines in such a manner as to warn aircraft of the existence of the telephone wires to the north of Strickler's airstrip. Jurisdictions are also split on this issue, some holding there is no duty (*Columbia Helicopters, Inc. v. U.S. By and Through Bonneville Power Administration (Dept. of Interior)*, 314 F.Supp. 946 (D.C.Or.)), while other authorities recognize that such a duty exists. (*Yoffee v. Pa. Power & Light Co.*, [385 Pa. 520, 123 A.2d 636 (Pa.1956)], *supra; United States v. State of Washington*, 351 F.2d 913 (9th Cir.); *El Paso Natural Gas Co. v. United States*, 343 F.2d 145 (9th Cir.); *Arizona*

*Public Service Company v. Brittain, supra.*) Each of those cases turned upon its own complex factual pattern, and this court is of the opinion that such a question should not be decided as a matter of law. Foreseeability is the foundation of liability in the instant case, and we conclude that the duty to mark the lines is also a question for the trier of fact. *Weber, supra,* at 130.

Finally, in *Union Pacific Railroad Company v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002), a case involving an injured employee's claim against a railroad for injuries sustained at a derailment site, the Supreme Court of Texas held:

> We have held that whether a legal duty exists, including the foreseeability element, is typically a legal question. [*Mitchell v. Missouri–Kansas–Texas R.R. Co.*, 786 S.W.2d, 659, 662 (Tex. 1990).[4]] However, if the essential facts about foreseeability as an element of the railroad's duty are disputed, the question is a fact issue for the jury. *Mitchell*, 786 S.W.2d at 662. Evidence is disputed when it "does not conclusively establish the pertinent facts or the reasonable inferences to be drawn" from those facts. *Mitchell*, 786 S.W.2d at 662.

 While we may believe that such an approach is more prudent, especially in cases such as the one before us, we are nevertheless bound by Kentucky jurisprudence, which dictates that foreseeability as it relates to duty is a pure question of law to be decided by the court. The Sixth Circuit Court of Appeals in *James v. Meow Media, Inc.*, 300 F.3d 683, 691–92 (6th Cir.2002), *cert. denied*, 537 U.S. 1159, 123 S.Ct. 967, 154 L.Ed.2d 893 (2003), recently interpreted Kentucky law on this point:

**4.** *Williams* overruled *Mitchell* on other grounds.

The parties in this case have argued at length over whether the foreseeability inquiry required to determine the existence of a duty of care is a pure question of law for the court or a question of fact that should generally be submitted to a jury. Under Kentucky law, it is clear that the existence of a duty of care to the plaintiff, and its underlying foreseeability inquiry, is a pure question of law for the court. *Mullins,* 839 S.W.2d at 248 ("The question of duty presents an issue of law"); *Sheehan,* 913 S.W.2d at 6. *See also* 57A Am.Jur.2d *Negligence* § 20 (listing other jurisdictions in which the duty inquiry is a question of law). The allocation of responsibility for determining this question to the courts, rather than to juries, reveals that the duty inquiry contains an important role for considering the policy consequences of imposing liability on a certain class of situations. Essentially, the foreseeability inquiry requires courts to determine questions inexorably tied to the ultimate question of whether the defendant was negligent. After all, the probability of the harm is a significant factor in traditional assessment of negligence. By placing the foreseeability analysis in the hands of courts, the existence of duty element of the *prima facie* case serves as a gatekeeper for the otherwise extremely broad concept of negligence.

(Footnotes omitted.)

By placing the determination as to the existence of a duty in the province of the court, Kentucky has made the duty of care a "policy determination." *Mullins, supra,* at 248. As a matter of policy, we cannot say that a plaintiff might never recover where their injury is the result of an unmarked power line, even where a subsequent act may or may not have ultimately caused the injury. It is certainly arguable that FRECC knew or should have known that airplanes would fly at low altitudes over a recreational lake. Further, FRECC was on notice that a prior line strike had occurred over Nolin Lake.

We are not persuaded by FRECC's contention that to establish a duty in this case would, in effect, require all utilities and other owners of transmission lines across the Commonwealth to mark the "tens of thousands of miles of lines and wires within Kentucky's borders." To the contrary, we have established only that a utility has a duty to mark a line that it reasonably knows will create a hazard; in this case, the hazardous line crossed a body of water. We simply cannot agree with FRECC that the expense of marking such lines would be "exorbitant and unjust."

Under the facts presented, considering that FRECC's line was not visible over the water and its supporting structures were obscured, we must conclude that the nature of Lee's injury was a foreseeable result of FRECC having failed to mark the line in question. However, we reach no decision regarding whether this failure was negligent, as that question is more properly left for the trier of fact. Nor does a finding of foreseeability under a duty of care analysis preclude a finding that Thompson's act of flying low over the lake was the proximate or legal cause of the accident, as these too are questions of fact for a jury to decide.

For the foregoing reasons, the order of the Barren Circuit Court granting summary judgment in favor of Farmer's Rural Electric Cooperative Corporation is reversed. This case is remanded for further proceedings consistent with this opinion.

ALL CONCUR.