**Andria KENDALL, Appellant**

v.

**Mark E. GODBEY, Zachary D. Smith, and Godbey & Associates, Appellees**

**NO. 2016-CA-001266-MR**

Court of Appeals of Kentucky.

**DECEMBER 15, 2017; 10:00 A.M.**

BRIEF FOR APPELLANT: Robert L. Poole, Covington, Kentucky.

BRIEF FOR APPELLEES: Joseph W. Borchelt, Cincinnati, Ohio.

BEFORE: KRAMER, CHIEF JUDGE; CLAYTON, AND TAYLOR, JUDGES.

OPINION

CLAYTON, JUDGE:

In a legal malpractice action, Andria Kendall appeals the Kenton Circuit Court's grant of summary judgment in favor of Mark E. Godbey, Zachary D. Smith, and Godbey & Associates ("Godbey"), and its denial of the motion to vacate the summary judgment. Kendall maintained that Godbey committed legal malpractice by missing the statute of limitations while representing her in a negligence action.

After a careful review of the record and the arguments, we reverse and remand because the grant of summary judgment was improper.

## BACKGROUND

On October 10, 2010, Kendall was raped and sexually assaulted by Mohamud Abukar, a taxi cab driver for Community Yellow Cab ("Community Cab").[1] In December 2010, she hired Mark Godbey and his law firm to represent her in a civil suit arising out of the sexual assault. But no civil suit was ever filed. Further, Godbey, who is an Ohio attorney, ostensibly informed Kendall that he was licensed to practice law in Kentucky when he was not.

Approximately two years later, after Godbey had failed to file the suit, Kendall sued him and his law firm for legal malpractice. She contended that because Godbey failed to file a lawsuit against the cab driver, the cab company, or other potentially liable parties within applicable statute of limitations, he breached his contract with her and committed legal malpractice. Kendall also argued that Godbey fraudulently induced her to enter into a contract for legal representation by claiming that he was licensed to practice law in Kentucky. Lastly, she claimed that Godbey & Associates was vicariously liable for the actions of Mark E. Godbey and Zachary D. Smith.

During the pendency of the malpractice matter, Godbey filed a motion for summary judgment arguing that because Kendall would not have prevailed in the original action, he and his associates were not liable for legal malpractice. Godbey believed he was entitled to summary judgment because for Kendall to succeed in a legal malpractice matter, under Kentucky's suit-within-a-suit approach, she must establish that the original negligence

action would have been successful. Godbey asserted that Kendall would not have been able to establish negligence on the part of Community Cab, and thus, Godbey was not liable for legal malpractice.

On February 15, 2016, the trial court granted summary judgment in favor of Godbey. The trial court maintained that the crux of the underlying negligence was based on the theory of negligent hiring and retention. Since Abukar apparently had no criminal history or record, the sexual assault was not foreseeable by his employer, and therefore, Community Cab would not have been liable for Abukar's actions. Hence, the trial court held that the lawyers' failure to file a timely law suit would not have resulted in an award of damages and no legal malpractice occurred. Kendall filed a motion to vacate the summary judgment, which the trial court also denied. Kendall now appeals from these two decisions.

## STANDARD OF REVIEW

The standard of review on appeal when a trial court grants a motion for summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001), *citing Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genu-

1. Abukar was tried and convicted of first degree rape in the Kenton Circuit Court; Abukar appealed and the Kentucky Court of Appeals reversed. The Kentucky Supreme Court in *Commonwealth v. Abukar*, 497 S.W.3d 231 (Ky. 2016), reversed the decision of the Court of Appeals and remanded to the Court of Appeals to consider whether the trial court erred in denying the *Batson* challenge. This Court affirmed Abukar's conviction in a published opinion that is now final. *Abukar v. Commonwealth*, 530 S.W.3d 915, 2017 WL 3124085 (Ky. App. July 21, 2017).

ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure (CR) 56.03.

The trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Lewis*, 56 S.W.3d at 436. Moreover, because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and reviews the issue *de novo*. *Id.* Having determined the standard of review, we turn to the case at hand.

## ANALYSIS

Kendall appeals the grant of summary judgment in favor of Godbey in the legal malpractice action. She argues that the trial court erred in holding that the heightened standard of care for common carriers did not apply; that even under the ordinary standard of care, the trial court erred since foreseeability is a question of material fact for a jury to decide; and finally, that the trial court erred in its failure to address the statute of limitations issue. Godbey counters that under the "suit-within-a-suit" approach to legal malpractice in Kentucky, Kendall could not sustain her burden of proof because the cab company could not reasonably foresee that its driver would sexually assault a female passenger, and therefore, the grant of summary judgment was proper.

In its grant of summary judgment to Godbey, the trial court found that Abukar's assault was a willful, malicious assault outside the scope of his employment. Furthermore, it clarified that the liability was not predicated upon by a breach of the cab company's failure to safely transport its passengers but rather a breach of the cab company's duty of care to properly hire and retain employees. In addition, the trial court held that because criminal activity was not foreseeable by the cab company since Abukar's record was apparently clean, the cab company did not breach its duty of care, and hence, was not negligent. Accordingly, the trial court decided that the underlying suit would not have been successful, and Godbey's negligence was not the proximate cause of Kendall's damages.

Legal malpractice cases require a specific methodology. Under Kentucky law, a plaintiff in a legal malpractice action has the burden of proving that an employment relationship existed with the defendant/attorney; that the attorney neglected the duty to exercise the ordinary care of a reasonably competent attorney in the same or similar circumstances; and, that the attorney's negligence was the proximate cause of damage to the client. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003).

Reviewing the legal malpractice issue, it is undisputed that an employment relationship existed between Kendall and Godbey and that Godbey missed the one-year statute of limitations in a negligence action. *See* Kentucky Revised Statutes (KRS) 413.140. Consequently, to prevail in the malpractice action, Kendall must demonstrate that she would have succeeded in the underlying negligence claim. In other words, but for the attorney's negligence, the plaintiff would have likely been successful. *Id.* The necessity to deal with the legal malpractice and the underlying matter is commonly known in Kentucky as the suit-within-a-suit approach. Hence, it is our task in this matter to review the underlying negligence action to ascertain whether Community Cab was negligent, and if not, Godbey was entitled to a judg-

ment as a matter of law because no genuine issues of material fact existed supporting the negligence action.

 "In any negligence action under Kentucky law, a plaintiff must prove the existence of a duty, breach thereof, causation, and damages." *Boland–Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009) (citations omitted). Typically, duty is a question of law, while breach and injury are questions of fact for the jury to decide. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003).

 First, we address the issue of duty and its relationship to foreseeability. Here, Godbey and the trial court suggest that Kendall's suit is based on Community Cab's negligent hiring and/or retention of Abukar. But the complaint does not reference negligent hiring or retention as the basis for its claim. Rather, Kendall asserts in the complaint that she is pursuing "any and all civil claims arising out of the sexual assault." Thus, while negligent hiring and retention are a type of negligence, Kendall has not specified negligent hiring and retention as the only basis for her claim but instead is suing for any negligence arising out of the actions of Community Cab.

 Both Godbey and the trial court maintain because duty is a legal question, it is for the court to decide. Kentucky courts recognize a "universal duty" of care under which "every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Lee v. Farmer's Rural Elec. Co-Op. Corp.*, 245 S.W.3d 209, 212 (Ky. App. 2007) (citation omitted). Furthermore, as general rule, all persons have duty to use ordinary care to prevent others from being injured as the result of their conduct. It is well established that an owner of a business must exercise ordinary care to protect its customers from injury. *Sidebottom*

*v. Aubrey*, 267 Ky. 45, 101 S.W.2d 212 (Ky. 1937).

Negligent hiring/retention claims were expressly recognized in *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438 (Ky. App. 1998), where the Court held that liability can be imposed on an employer who knew or should have known that the employee was unfit for the job in which he was employed and that his placement or retention in that job created an unreasonable risk of harm. *Id.* at 442.

 In negligent hiring/retention claims the law imposes a duty upon the employer to use reasonable care in the selection or retention of its employees. *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705 (Ky. 2009). Under the theory of negligent hiring/retention, the employer's liability may only be predicated upon its own negligence in failing to exercise reasonable care in the selection or retention of its employees. *Id.* at 732. Thus, the focus is on the employer's conduct and requires that the traditional negligence elements of a negligence claim be established—duty, breach, and consequent injury. *Grubbs ex rel. Grubbs v. Barbourville Family Health Center, P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003).

We disagree with both the trial court and Godbey that Community Cab had no duty to Kendall. They contend that there was no foreseeability that Abukar would assault Kendall because he had a clean criminal record, and therefore, Community Cab had no foreseeability of the assault. No foreseeability equals no duty to Kendall, a passenger.

Nevertheless, in *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901 (Ky. 2013), the Kentucky Supreme Court restructured the issue of foreseeability in relation to duty. The Court in *Shelton* embraced the universal duty of care con-

cept rather than the foreseeability analysis. By removing foreseeability as a part of the duty analysis, duty effectively becomes a given element in negligence actions. Hence, we believe that Community Cab had a duty to its passengers to use reasonable care in the selection of its employees.

Foreseeability is a complex concept. It may be part of the calculus in the determination of duty, breach of duty, or causation. In the matter here, the fact that allegedly no criminal history was found is unrelated to duty since the duty is to properly hire employees. One way to do so is to do an appropriate background check. Indeed, focusing on foreseeability, it is possible that a taxi cab company, which does not vet its potential employees, could put passengers at risk of injury. The issue of foreseeability is particularly pertinent here since Community Cab had already experienced, several years earlier, one of its cab drivers seriously assaulting and injuring a passenger.

Godbey and the trial court's estimation that the injury was not foreseeable since Abukar had an ostensibly clean criminal record, in fact, does not absolve Community Cab of its duty. Community Cab has a duty to appropriately make sure its drivers are competent and safe regardless of the outcome of the background check.

■ As explained in *Lee*, 245 S.W.3d at 212,

[f]oreseeability inquiries are often complicated by the tendency to confuse foreseeability and proximate cause. Whether a harm was foreseeable in the context of determining duty depends on the general foreseeability of such harm, not whether the specific mechanism of the harm could be foreseen.

2. The basis for Godbey's assertion that Abukar had a pristine criminal record is an opin-

Community Cab had a duty to ascertain the background of its drivers because it was foreseeable that without performing background checks, they could hire incompetent, unsafe, and dangerous drivers. Duty is a legal concept and Abukar's "pristine"[2] criminal record is irrelevant if the cab company had not properly searched his background since an improper vetting of Abukar would be a breach of duty, which is a jury question.

■ The breach of duty question is generally a fact issue for a jury. *A.A. By and Through Lewis v. Shutts*, 516 S.W.3d 343, 349 (Ky. App. 2017). And the issue of foreseeability comes into the jury's determination whether Community Cab acted as a reasonable common carrier in the hiring of its employees. *Shelton*, 413 S.W.3d at 914. Next, we examine whether any genuine material fact existed, which makes the grant of summary judgment improper. This question comprises the issue of standard of care.

■ Regarding the standard of care, Kentucky has long recognized the common carrier standard of care. A common carrier of passengers owes those passengers the highest degree of care in transporting them to protect them from "dangers that foresight can anticipate and to exercise the utmost skill, diligence and foresight for [their] safety, consistent with the practical operation of his bus." *Wise v. Fannin*, 306 Ky. 327, 207 S.W.2d 764, 765 (1948). Indeed, "[a] common carrier owes its passengers a higher degree of care than does the operator of a private vehicle." *Indianapolis & Southeastern Trailways, Inc. v. Blankenship*, 444 S.W.2d 267, 268 (Ky. 1969) (citing *Adams v. Louisville Taxicab & Transfer Co.*, 307 Ky. 405, 211 S.W.2d 397, 399 (1948)).

ion expressed in a letter from his public defender in the criminal action.

Community Cab, which is engaged in the business of transporting passengers for hire is considered a common carrier, and therefore, under the duty to use the highest degree of care for the safety of its passengers. Taxi cabs are included under the common carrier standard of care, and " '[t]he highest degree of care' means the utmost care exercised by prudent and skillful persons in the operation of the conveyance." *Shelton Taxi Co. v. Bowling*, 244 Ky. 817, 51 S.W.2d 468, 470 (1932) (citations omitted).

Godbey provides a constant drum beat that the common carrier heightened standard of care is outdated law. In addition, both Kendall and Godbey misstate the standard because, as noted above, it is not one of strict liability but rather a heightened standard of care. In its order denying the motion to vacate the grant of summary judgment, the trial court agreed that the heightened standard of care for common carriers was antiquated law, but neither Godbey nor the trial court provided a Kentucky case overruling the common carrier standard of care. As an intermediate appellate court, we do not have the option of disregarding a long-standing precedent, regardless of its age. Therefore, the heightened standard of care affixed to a common carrier is still relevant, and the trial court erred in holding that it was no longer the law of Kentucky.

Keep in mind, however, the heightened standard of care does not result in strict liability. Under the common carrier standard of care, "[a]lthough a carrier must exercise the highest degree of care for its passengers, it is not an insurer of their safety." *Fisher v. Louisville Transit Co.*, 303 S.W.2d 272, 273 (Ky. 1957). Further, in *Gladdish v. Southeastern Greyhound Lines*, 293 Ky. 498, 169 S.W.2d 297, 299 (1943), which is still good law in Kentucky, it is stated:

It is the rule in this state, and the almost universal rule, that a carrier is liable for assaults committed on passengers by its employees whether the assault is in the supposed interest and discharge of a supposed duty to the carrier or was merely that of an individual motivated by conceptions of personal wrong and entirely disconnected with the performance of a duty.

Even though *Gladdish* was focused on the doctrine of *respondeat superior*, it still highlights that Community Cab has a responsibility to its passengers. Therefore, we now examine whether genuine issues of material fact exist for a jury to ascertain that Community Cab appropriately or inappropriately investigated Abukar's background under the heightened responsibility of the common carrier standard of care.

The record regarding the Community Cab's investigation of Abukar is interesting. Abukar applied for a position with Community Cab on December 2, 2009. Community Cab provides several documents for potential employees to complete prior to employment. Initially, we observe that most of the forms completed by Abukar do not have his signature.

These documents included the "Employment Eligibility Verification I-9" form, which is used to ascertain immigration information about a prospective employee. Abukar did not sign this document although someone put an "X" on the form to indicate United States citizenship. The address on the I-9 form did not match Abukar's address on the Kentucky driver's license he had obtained eight days prior to filling out the I-9 form. Further confusing the correct address, Abukar, on the "Lease Operator" agreement, completed after both the driver's license and the I-9 forms, used the first address provided on the driver's license. Significantly, Community Cab never attested that after the I-9 was

completed, it confirmed Abukar's eligibility to work in the United States.

On the form titled "Community Yellow Cab Background Release Form-Independent Contractor," which Abukar completed on December 10, 2009, he used the address listed on the "Lease Operator" agreement rather than the one on the driver's license. (The time sequence on the addresses is inconsistent.) Further, on the background release form, Abukar states that his previous address was Mogoisho [*sic*], Somalia with no street address. (He does not provide any Ohio address on the form indicating he surrendered an Ohio driver's license to obtain a Kentucky driver's license.) Beside these addresses on the forms, Abukar did not indicate the years that he resided in these places.

Further, on the background release form, Abukar provides no information about education. Regarding his previous employment, his responses are sketchy. The only information given about his most recent employment is "Club Chef Christy Harrison" in "Kentucky." No phone numbers or addresses. Regarding his employment prior to Club Chef, he lists "Boob Cat" with no additional information.

When a company official was asked during a deposition if anyone at the company investigated the information on the background release form to ascertain whether it was correct, no evidence was proffered to verify an investigation. Regarding all the proffered documents, it was difficult to determine how long Abukar had been in Kentucky when he applied for the taxi cab job. It appeared that perhaps he only had been in Kentucky for a few days. Abukar began working for Community Cab in January 2010; the assault occurred in October 2010.

▮ Even the trial court in its summary judgment order opined that "this court agrees with the Plaintiff it is possible

that Community should have made a more thorough investigation into its drivers' backgrounds...." Contrast this statement with the trial court's observation in the order that Kendall did not provide "one scintilla of evidence" that Abukar posed a risk to his passengers. However, in a negligent hiring matter, Kendall is not required at this stage of the litigation to provide evidence of Abukar's danger to passengers but instead to demonstrate that material issues of genuine fact exist as to his background. Given Community Cab's duty to properly investigate the background of potential employees, Abukar's ostensibly clean record does not absolve them from their duty to discovering whether he is a safe and reliable employee.

Given that our summary judgment review is *de novo*, we do not make a factual decision but are merely required to determine whether genuine issues of material fact exist. As an aside, a trial court also determines in summary judgment whether genuine issues of material fact exist. Our appellate review of summary judgment is whether the trial court accurately determined that a judgment should issue as a matter of law or because no genuine issues of material fact are present.

Since genuine issues of material fact exist as to whether Community Cab properly vetted Abukar prior to employing him, we hold that summary judgment was improperly granted and remand this matter to the trial court for a continuation of the litigation concerning the legal malpractice. In making this determination, we are proffering *no opinion as to the ultimate result* of the litigation but merely indicating that summary judgment was premature.

*Statute of limitations*

Kendall also claims that the trial court erred by not addressing the question of statute of limitations. Two separate stat-

utes of limitations are implicated. The statute of limitations for personal injury, negligence, and intentional torts is governed by the one-year statute of limitations. KRS 413.140. But Godbey claimed that the heightened standard of care for a common carrier is a contractual claim, that is, the implied contract of safe carriage, and therefore, is governed by a five-year statute of limitations. KRS 413.120. However, no Kentucky case has specifically determined whether KRS 413.120 is applicable to the implied contract of safe carriage.

Given the lack of clarity on the issue of contract and the common carrier standard of care, Kendall filed another suit against the cab company based on the contractual theory of liability. Thus, Godbey's failure to file suit on this theory of liability did not cause Kendall to miss the statute of limitations and the claim of legal malpractice is obviated on this issue.

Although Godbey's failure to file an action on the possible contract issue did not prevent Kendall from prevailing on the contract issue, she was prevented from filing a negligence action because of Godbey's failure to file the action within the proscribed statute of limitations. We have determined in Kendall's underlying suit both that Community Cab had a duty to its passengers and also that genuine issues of material fact exist regarding whether it breached this duty. Therefore, the trial court's grant of summary judgment was improper on the negligence issue because the failure of the attorneys to file an action before the statute of limitations tolled is possibly legal malpractice.

Lastly, throughout the appellee brief, unpublished cases and cases from other jurisdictions lacking precedential impact were frequently used. Regarding the use of unpublished cases, CR 76.28(4)(c) states:

> Opinions that are not to be published shall not be cited or used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court. Opinions cited for consideration by the court shall be set out as an unpublished decision in the filed document and a copy of the entire decision shall be tendered along with the document to the court and all parties to the action.

Godbey did not highlight these cases as unpublished nor provide a copy of the decision with its brief. Most significant, and perhaps egregious, is that Godbey never indicated when using unpublished cases whether Kentucky had a published case that adequately addressed the issue. Clearly, unpublished cases are not binding precedent. *Estate of Wittich By and Through Wittich v. Flick*, 519 S.W.3d 774, 779 (Ky. 2017); CR 76.28(4)(c).

Moreover, Godbey not only used unpublished cases, it also extravagantly used cases from other jurisdictions, both state and federal. (In fact, some cases were both from other jurisdictions and unpublished.) Unpublished opinions from other states have no precedential value. *Courier-Journal v. Jones*, 895 S.W.2d 6, 7 (Ky. App. 1995). And Kentucky courts are not bound by cases from federal courts that construes state law in a diversity action. *Unifund CCR Partners v. Harrell*, 509 S.W.3d 25, 28 (Ky. 2017).

We strongly caution the Appellee that appellate courts do not rely on non-binding, inapplicable, and unpublished case law nor do they give any precedential weight to courts of other jurisdictions.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the Kenton Circuit Court

granting summary judgment and remand for additional proceedings.

ALL CONCUR.