RENDERED:  MAY 13, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-0529-MR

JAMIE E. THOMAS                                                  APPELLANT

v.                  APPEAL FROM JEFFERSON CIRCUIT COURT
                    HONORABLE AUDRA J. ECKERLE, JUDGE
                    ACTION NO. 19-CI-004746

BRIAN ALLEN AND
THE THIRSTY PEDALER, LLC                                         APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  Jamie E. Thomas ("Thomas") seeks to overturn the

Jefferson Circuit Court's grant of summary judgment in favor of Brian Allen

("Allen") and The Thirsty Pedaler, LLC ("TTP").  In granting summary judgment,

the trial court found no dispute that Thomas executed a legal and valid waiver of

liability, which specifically applied to Thomas's negligence allegations against Allen and TTP. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

TTP operates a commercial quadricycle business. Participants who are twenty-one (21) years of age and older pay to tour a generally designated area of downtown Louisville on an electric-powered, pedal-propelled quadricycle steered and operated by a TTP employee. The quadricycle can be operated without pedaling, and it travels at slow speeds of five to six miles per hour. It has an accelerator, brakes, headlights, brake lights, turn signals, and a steering wheel, and it must follow the rules and regulations of the road.

On September 22, 2018, Thomas joined her family on one of TTP's quadricycles. When Thomas arrived at TTP's check-in area in downtown Louisville, Thomas reviewed "The Thirsty Pedaler, L.L.C. Waiver and Release of Liability" (the "Waiver") on an iPad. Additionally, Thomas fully executed the Waiver by inserting her name, date of birth, email address, and electronic signature. Thomas testified that she voluntarily executed the Waiver. Specifically, the Waiver stated:

> Waiver and Release of Liability. I the undersigned user, acknowledge and understand that during my use of the Thirsty Pedaler LLC (The Thirsty Pedaler) pedal tavern/pedal pub (Vehicle) operated by The Thirsty Pedaler, I may be exposed to a variety of hazards and risks, foreseen or unforeseen, which are inherent in

travelling in a vehicle, quadricycling, recreation, exercise and related activities. These inherent activities include, but are not limited to, the dangers of serious personal injury, death and property damage (Injuries and Damages) resulting from, but not limited to: (i) physical exercise and exertion; (ii) physical contact with other vehicles, other individuals and road hazards; (iii) falling or tripping due to road hazards, uneven surfaces or debris; (iv) falling from heights, including falling off the Vehicle; and (v) other hazards associated with travel in a vehicle. I further acknowledge and understand these Injuries and Damages cannot be eliminated without destroying the unique character of the Vehicle. I fully understand that The Thirsty Pedaler has not tried to contradict or minimize my understanding of these risks. I know that Injuries and Damages can occur by natural causes or activities of other persons, other users, staff of The Thirsty Pedaler or other third parties, either as a result of negligence or because of other reasons. I understand the risks of such Injuries and Damages involved in the Vehicle and I appreciate that I may have to exercise extra care for my own person and for others around me in the face of such hazards. I further understand that there may not be medical personnel or medical facilities or expertise necessary to deal with the Injuries and Damages to which I may be exposed. In consideration for my acceptance as an eligible user of the Vehicle, and the services and amenities provided by The Thirsty Pedaler in connection with the Vehicle.

I CONFIRM MY UNDERSTANDING OF THE FOLLOWING: RELEASE OF LIABILITY. To the fullest extent allowed by law, I agree to WAIVE AND DISCHARGE CLAIMS AGAINST, RELEASE FROM LIABILITY, INDEMNIFY AND HOLD HARMLESS The Thirsty Pedaler and its parents, subsidiaries and affiliates and their respective past and present officers, directors, stockholders, managers, members, partners, agents and employees (collectively, Released Parties) from and against ANY AND ALL LIABILITY on

account of, or in any way resulting from, my death or personal injury relating to my use of the Vehicle, even if caused by NEGLIGENCE of the Released Parties. Such negligence could involve (a) negligent operation and supervision of the Vehicle, (b) negligent maintenance or operation of the equipment or Vehicle in general, (c) negligent manufacture of or use of equipment to be used in the Vehicle, including the Vehicle itself, and (d) the negligent provision of emergency response services. I understand and intend that the assumption of risk and release is binding upon my heirs, executors, administrators, and assigns. This Waiver and Release is intended to be as broad and inclusive as permitted by law. . . . I have read this Waiver and Release of Liability in its entirety and I freely and voluntarily choose to use the Vehicle and assume all risks of Injuries and Damages.

At the time of the injury claimed herein, Allen was the TTP employee operating one of the four quadricycles owned by TTP. Thomas contended that Allen lost control of the quadricycle and struck a telephone pole, which resulted in Thomas's falling from the quadricycle. Specifically, Thomas alleged that she fell backward into the street, lost consciousness, and an ambulance took her to the hospital. Thomas further alleged that the fall led her to sustain a concussion and other injuries. Additionally, since the incident, Thomas claims she has had memory and hearing loss, had to have a pacemaker installed, and has continued to suffer pain.

On August 5, 2019, Thomas filed a lawsuit to recover damages for such injuries on a theory of negligence. On February 4, 2020, Allen and TTP

-4-

moved for summary judgment, arguing that the Waiver barred Thomas's negligence claims as a matter of law. Thomas responded on February 27, 2020. Thereafter, the parties agreed to an extended briefing schedule to allow for further discovery before submitting the summary judgment motion to the trial court for a ruling. Following a seven (7)-month period for additional discovery, on October 1, 2020, Allen and TTP filed their reply, and on October 21, 2020, Thomas filed a sur-reply.

Particularly, Thomas claimed that Allen had stated in his deposition that there were no seatbelts or seatbacks in the quadricycle on the day of the incident. Thomas pointed to the following exchange at Allen's deposition:

Q.	On this Thirsty Pedaler, did the seats have backs?

A.	No.

Q.	On this Thirsty Pedaler, did the seats have seatbelts?

A.	No.

TTP's reply contained an affidavit from Allen clarifying his deposition testimony that he "understood the question to ask whether all of the seats have backs," which was why he answered "no." Similarly, he "understood the question to ask whether all of the seats have seatbelts," again explaining why he answered in the negative. Further, Allen stated in his affidavit that "[e]ach passenger seat on each Quadricycle operated by The Thirsty Pedaler L.L.C. has either a back or a seatbelt

-5-

and did so on September 22, 2018." He further averred that the seat on which Thomas was sitting had a seatbelt.

In addition to Allen's affidavit, TTP produced an affidavit from Detective Dereck Jeffers, an Alcoholic Beverage Control (the "ABC") enforcement division officer. One of his job duties was to inspect quadricycles for compliance with Louisville Metro Ordinance 115.583 (the "Ordinance"). The Ordinance requires quadricycles to have either a seatback or a seatbelt. Jeffers stated in his affidavit that he had inspected all four of the quadricycles owned and operated by The Thirsty Pedaler and at all times had found them to be compliant with the Ordinance. Further, TTP's four quadricycles had valid permits as of September 22, 2018, and they had received additional valid permits since that date. Had they not had a seatback or seatbelt, Jeffers testified that TTP would not have been issued permits and the ABC would have cited TTP for non-compliance with the Ordinance.

On January 5, 2021, the trial court held a hearing on the motion for summary judgment. At the hearing, Lieutenant Bradley Silvera of the ABC testified that the ABC regularly inspected TTP's quadricycles and that the ABC would not have issued TTP permits if the seats on its quadricycles did not have either a seatback or seatbelt. Silvera further testified that TTP had never been cited for violating the Ordinance. Moreover, Silvera testified that he had independent

-6-

knowledge of TTP's quadricycles having either one seatbelt per seat or a seatback and provided pictures of the quadricycles. At the conclusion of the hearing, the parties submitted the summary judgment motion for the court's ruling with no objection from Thomas.

On February 10, 2021, the trial court entered an opinion and order granting summary judgment in favor of Allen and TTP on multiple grounds. Thomas then moved the trial court to alter, amend, or vacate the summary judgment, which the trial court denied. This appeal followed.

## ANALYSIS

### a. Standard of Review

This appeal arises from a grant of summary judgment in favor of Allen and TTP. In such matters, the appellate court "determine[s] whether the record supports the trial court's conclusion that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Foreman v. Auto Club Property-Casualty Insurance Company*, 617 S.W.3d 345, 349 (Ky. 2021) (internal quotation marks and footnote omitted). Summary judgment "expedite[s] the disposition of cases and avoid[s] unnecessary trials when no genuine issues of material fact are raised[.]" *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citations omitted). It is appropriate to terminate litigation when it appears impossible for the nonmoving

party to produce evidence at trial warranting a judgment in its favor as a matter of law. *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 256 (Ky. 1985). While the record must be viewed in the light most favorable to the nonmoving party, "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482 (citations omitted).

### b. **Discussion**

### (1) **The Waiver's Validity Under *Hargis v. Baize***

The Kentucky Supreme Court has held that:

a preinjury release will be upheld only if

(1) it explicitly expresses an intention to exonerate by using the word "negligence;" or

(2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or

(3) protection against negligence is the only reasonable construction of the contract language; or

(4) the hazard experienced was clearly within the contemplation of the provision.

*Hargis v. Baize*, 168 S.W.3d 36, 47 (Ky. 2005) (citations omitted). As evidenced by the *Hargis* Court's use of the word "or" between the four alternatives, if a waiver satisfies just one of the foregoing criteria, it is legally valid.

-8-

Here, the trial court correctly held that the Waiver satisfies not just one but all four alternatives under *Hargis*.  First, the Waiver explicitly uses – and even emphasizes – the word "NEGLIGENCE" in capital letters.  Second, the intention to release TTP and its employees from personal injury caused by their own conduct is clear and specific.  The Waiver states, "*Injuries* . . . can occur by . . . *activities of staff of The Thirsty Pedaler*[,]" and the Waiver explicitly encompasses "*personal injury* relating to my use of the Vehicle, even if caused by NEGLIGENCE *of the Released Parties*."  (Emphasis added.)  Third, the Waiver repeatedly used the word "negligence."  Thus, protection against negligence is the only reasonable construction.  Finally, the Waiver undoubtedly contemplated the perils at issue in this case:  "physical contact with . . . road hazards"; "falling . . . due to road hazards"; "falling from heights, including falling off the Vehicle"; and "negligent operation and supervision of the Vehicle."  Accordingly, we agree with the trial court's determination that the Waiver is valid under the *Hargis* criteria.

**(2) Public Policy**

**(a) The Ordinance**

Kentucky courts have stated that courts must also analyze pre-injury waivers for "violations of public policy." *Miller as Next Friend of E.M. v. House of Boom Kentucky, LLC*, 575 S.W.3d 656, 660 (Ky. 2019).  Thomas argues that the Waiver violates public policy because Kentucky law prohibits waivers for

-9-

violations of safety duties. Indeed, *Hargis* stands for the proposition that "[a] party cannot contract away liability for damages caused by that party's failure to comply with a duty imposed by a safety statute." 168 S.W.3d at 47 (citations omitted).

In particular, Thomas points to Allen's deposition testimony in which Thomas claims that Allen confirmed that TTP had no seatback or seatbelts on the specific quadricycle in question and argues that such testimony presented a question of material fact sufficient to overcome summary judgment as to whether TTP violated the Ordinance. On the other hand, Allen and TTP contend that the Ordinance is not a "safety statute" as described in *Hargis*.

However, we believe that – regardless of whether the Ordinance can be considered a "safety statute" under *Hargis* or not – the Waiver is nevertheless valid. We do so based on our conclusion that Thomas did not present sufficient evidence to demonstrate that a reasonable jury could, "without resorting to speculation," conclude that TTP had violated the Ordinance. *See Patton v. Bickford*, 529 S.W.3d 717, 736 (Ky. 2016), *as modified on denial of reh'g* (Aug. 24, 2017).

As previously discussed, the Ordinance required each seat in a quadricycle to have either a seatback or a seatbelt. In this case, TTP and Allen presented sufficient evidence that TTP complied with the Ordinance and that each seat on the quadricycle at issue had either a seatback or a seatbelt. Two

independent, unbiased government officials provided sworn testimony that all of TTP's quadricycles were compliant with the Ordinance and had passed multiple inspections both before and after the incident.

Further, regarding Allen's deposition testimony, at the time that the trial court granted summary judgment, Allen had clarified his testimony via sworn affidavit. We note that, while at one point Allen answered "no" to the question of whether "[o]n this Thirsty Pedaler, did the seats have backs[,]" the following exchange also occurred at the end of the deposition:

> Q. Okay. The back seats on The Thirsty Pedaler – were there backs on those two seats on the one you were operating on the day at issue?
>
> A. On the very back bench there's a back to that. But not the back seats themselves, no.
>
> Q. Okay. But there's a back bench that people can sit on and there's a back to that, correct?
>
> A. Yes.

The preceding exchange would appear to directly contradict Allen's earlier deposition testimony, when he made the blanket statement that none of the seats had seatbacks. Moreover, Thomas stated in her deposition that "the back seat is like a bench like with a back[.]" Thus, neither party's deposition testimony was clear regarding the issue of seatbacks.

-11-

Under Kentucky law, a party may not use a post-deposition affidavit to create an issue of material fact by contradicting prior testimony but may use one to explain prior testimony or resolve inconsistencies in prior testimony. *Lipsteuer v. CSX Transp., Inc.*, 37 S.W.3d 732, 736 (Ky. 2000). In this case, Allen's post-deposition affidavit explained that he "understood the question to ask whether *all* of the seats have backs," so he answered "no." (Emphasis added.) Similarly, he "understood the question to ask whether *all* of the seats have seatbelts," again explaining why he answered in the negative. (Emphasis added.) Further, Allen stated in his affidavit that "[e]ach passenger seat on each Quadricycle operated by The Thirsty Pedaler L.L.C. has either a back or a seatbelt and did so on September 22, 2018." He further averred that the seat on which Thomas was sitting had a seatbelt. Thus, the affidavit did not expressly contradict the earlier testimony. Instead, it merely explained and expanded upon Allen's earlier testimony. As such, we find Allen's post-deposition affidavit was properly used to explain or expand upon his prior deposition testimony. *Lipsteuer*, 37 S.W.3d at 736. Thus, it provides even more evidence of TTP's compliance with the Ordinance.

On the other hand, Thomas offered no evidence of TTP's non-compliance with the Ordinance prior to the trial court's grant of summary judgment. The only evidence Thomas ever provided concerning the issue was an affidavit filed with her motion to alter, amend, or vacate and after the trial court's

-12-

grant of summary judgment stating that the quadricycle had no seatbacks or seatbelts.

Kentucky law is clear that "a motion to alter, amend, or vacate cannot be used to introduce evidence that should have been presented during the proceedings before the entry of the judgment." *Buridi v. Leasing Group Pool II, LLC*, 447 S.W.3d 157, 177 (Ky. App. 2014) (internal quotation marks and citation omitted). Here, Thomas has not explained why she did not submit her affidavit or other evidence in the seventeen (17) months in which discovery remained open in the matter.

Additionally, the affidavit lacked credibility, as it asserted that the quadricycle did not have any seatbacks, a fact that was demonstrably false and against Thomas's own deposition testimony. Thomas provided no other evidence or testimony that her seat did not have a seatbelt before the trial court granted summary judgment. Rather, all of the available evidence demonstrated that the quadricycle in question did have either a seatback or a seatbelt on each seat in compliance with the Ordinance. We reiterate that "a party opposing a properly supported summary judgment motion cannot defeat it without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest*, 807 S.W.2d at 482. Accordingly, we affirm the trial court as to this issue.

**(b) Kentucky Revised Statute ("KRS") 189.125**

Thomas further argues that the Waiver violated public policy because it violated certain statutes requiring seatbelts for low-speed vehicles. Specifically, Thomas argues that commercial quadricycles are "[l]ow-speed vehicles" as defined in KRS 186.010 and therefore that KRS 189.125 separately requires seatbelts on commercial quadricycles.

Aside from our discussion above as to the dearth of evidence regarding the seatbelt issue, we note that commercial quadricycles are defined separately from any vehicle contained in the Motor Vehicle chapters of Kentucky's statutory scheme. The definition of a "Commercial quadricycle" is contained in Chapter 241 of the Kentucky Revised Statutes, which governs the "Administration and Control" of "Alcoholic Beverages." Such definition in effect at the time of the incident stated that a "commercial quadricycle" was "a vehicle equipped with a minimum of ten (10) pairs of fully operative pedals for propulsion by means of human muscular power exclusively[.]" KRS 241.010(16). Additionally, "[v]ehicles propelled by muscular power" are expressly excluded from the definition of "motor vehicles" contained in KRS 189.010(19)(b)8. Finally, subsequent revisions to the definition of "commercial quadricycle" specifically state that "[a] 'commercial quadricycle' is not a motor vehicle as defined in KRS 186.010 or 189.010[.]" KRS 241.010(17)(b). Thus, because commercial

quadricycles are not motor vehicles, they cannot be low-speed vehicles. *See* KRS 186.010(16) (a "[l]ow-speed vehicle" is "a motor vehicle that" meets several other requirements).

Furthermore, a sixteen-passenger quadricycle is not subject to KRS 189.125(1), as that statute applies only to vehicles "designed to carry fifteen (15) or fewer passengers[.]" In this case, all of TTP's quadricycles have sixteen seats. Finally, KRS 189.125 only becomes an issue when motor vehicles are operated on "public roadways." KRS 189.125(6). Under Kentucky law, "'[r]oadway' means that portion of a highway improved, designed, or ordinarily used for vehicular traffic, *exclusive of the berm or shoulder*." KRS 189.010(10) (emphasis added). Here, the record reflects that the quadricycle at issue never left the shoulder of the road and was therefore not traveling by public roadway at the time of the incident. Thus, we do not find KRS 189.125 applicable in this case.

### (3) Common Carrier

Thomas next argues that TTP is a common carrier under Kentucky law and thus may not contract away negligence claims. Specifically, Thomas claims that anyone who is engaged in the business of transporting passengers for hire qualifies as a common carrier. Thomas then points to Section 196 of the Kentucky Constitution, which provides:

> Transportation of . . . passengers by railroad, steamboat
> or other common carrier, shall be so regulated, by general

law, as to prevent unjust discrimination. No common carrier shall be permitted to contract for relief from its common law liability.

However, we agree with the trial court that TTP was not a "common carrier" as described by the above language. Rather, patrons of TTP were seeking entertainment and not "transportation." Indeed, Kentucky courts have defined a common carrier as one who is "under a legal obligation" to transport goods or individuals from place to place. *Senters v. Ratliff's Adm'r*, 278 Ky. 290, 293, 128 S.W.2d 724, 725 (1939). Unlike other common carriers who hold themselves out as ready to transport individuals from one place to another, TTP is a tourist-focused activity that begins and ends at the same location. Thus, TTP does not provide necessary transportation services.

Thomas cites *Kendall v. Godbey* for the proposition that any business transporting passengers is a common carrier. 537 S.W.3d 326 (Ky. App. 2017). However, we do not find *Kendall* applicable in this situation as it does not analyze the common carrier elements but rather deals with a clear example of a common carrier – a taxicab company. *Id*. at 329. Specifically, the *Kendall* Court merely reiterated that "[t]axi cabs are included under the common carrier standard of care" without further analysis. *Id*. at 333. However, unlike taxicabs, TTP does not provide tours for the sake of transportation but drops participants off at the same location where they began and offers tourist-focused amusement within a

-16-

designated and limited geographical area.  Thus, we affirm the trial court's conclusion that TTP is not a common carrier.

### (4)  Additional Discovery

Finally, Thomas argues that the trial court erred by not permitting additional discovery before granting summary judgment.  However, we find that Thomas waived this argument because she did not object to submitting the summary judgment motion at the trial court level.  Thomas notes in her brief that she requested additional time for discovery in her response to the summary judgment motion, and indeed, at that point, both parties were given a seven (7)-month period for additional discovery.  However, Thomas chose not to take any additional depositions and did not propound any other discovery requests.

Likewise, following that seven (7)-month period of further discovery, Thomas did not request or desire any additional time when she filed her sur-reply or argued the motion before the trial court hearing.  Rather, the parties agreed on the discovery and briefing timeline, including extensions of summary judgment response deadlines, Thomas's opportunity for a sur-reply, the opportunity for and timing of oral argument, and the submission of the motion at the conclusion of the hearing.  Thus, we find that Thomas waived this argument on appeal.

### CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:  BRIEF FOR APPELLEES:

Lawrence I. Young    Bryce L. Cotton
Louisville, Kentucky    Charles M. Rutledge
           Louisville, Kentucky