RENDERED: MARCH 17, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1439-MR

KENT E. CULP                                                 APPELLANT

v.            APPEAL FROM MCCRACKEN CIRCUIT COURT
                    HONORABLE TIM KALTENBACH, JUDGE
                        ACTION NO. 20-CI-00283

SI SELECT BASKETBALL AND
PHILLIP R. SWINFORD                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND COMBS, JUDGES.

CETRULO, JUDGE: Appellant Kent E. Culp appeals from a McCracken Circuit Court Order granting summary judgment in favor of the Appellees and dismissing his claims of negligence.

## I.    FACTUAL AND PROCEDURAL HISTORY

Appellee Phillip Riley Swinford ("Director Swinford") was the founder and director of Appellee SI Select Basketball ("SI Basketball"), a youth basketball program based in Southern Illinois (collectively "Swinford"). To raise money for SI Basketball's five youth basketball teams, Swinford organized, promoted, and hosted two or three youth basketball tournaments each year. Swinford hosted two such tournaments at the Paducah Regional Sports Plex, LLC ("the Sports Plex"),[1] one in April 2018, and another in April 2019. This action resulted from the events at the April 2019 tournament ("the Tournament").

The Tournament included approximately 60 teams, with a total of 600 to 700 players between the ages of 14 and 17. One of the teams invited to the Tournament was coached by Keyon Chavez Menifield ("Coach Menifield"). Prior to the invitation, Director Swinford and Coach Menifield had had only one other interaction; the two coached against each other in a 2018 Missouri basketball tournament and their communication at that time was "cordial." At the time Director Swinford invited Coach Menifield's team to participate, and at the time of the Tournament, Coach Menifield had criminal convictions for assault and drug

_____

[1] The Sports Plex was an 80,000 square foot multi-use sports and recreation complex in McCracken County, Kentucky.

trafficking and was wanted on an active arrest warrant in Indiana.[2] There was no evidence that Director Swinford knew of this.

An agent of SI Basketball hired Appellant Kent E. Culp ("Referee Culp") to officiate at the Tournament. On April 6, Referee Culp officiated a game between Coach Menifield's team and a team from Edwardsville, Illinois ("the Game"). Coach Menifield's team lost in overtime. Deposition testimony later indicated that there was no apparent hostility – before or during the game – between Referee Culp and Coach Menifield. However, immediately after the Game, Coach Menifield struck Referee Culp from behind, hitting him in the head with his fist and knocking him unconscious and causing serious injury.[3] Coach Menifield then collected his team and left the Sports Plex. He was later apprehended at a nearby hotel and charged with second-degree assault.

In March 2020, Referee Culp filed a complaint in McCracken Circuit Court alleging four counts of negligence: 1) Swinford should have known of Coach Menifield's violent tendencies by conducting a criminal background check on the invited coaches; 2) Swinford failed to establish safety policies and procedures for the Tournament; 3) Swinford failed to use reasonable care to protect

---

[2] The warrant was issued after Coach Menifield assaulted a clerk at a hotel he was staying at during another youth basketball tournament.

[3] Referee Culp was transported to Vanderbilt Medical Center in Nashville with injuries including a brain bleed, broken collar bone, crack in his sinus cavity, concussion, and bruising to his face.

invitees; and 4) Swinford failed to provide security guards for the Tournament.

Referee Culp alleged Swinford's negligence was a substantial factor in causing the

personal injuries he suffered from the attack and that the risk of an altercation at

the Tournament was reasonably foreseeable. However, the trial court disagreed,

finding that

> [a]s [a] promoter[] of the [T]ournament, [Director] Swinford had a duty to protect [Referee Culp] from the reasonably foreseeable criminal actions of a third party . . . . Because the evidence is uncontroverted that [Coach Menifield's] assault of [Referee Culp] was not reasonably foreseeable, [Referee Culp] cannot prove a breach of [Director] Swinford's standard of care.

Therefore, in November 2021, the McCracken Circuit Court

dismissed Referee Culp's claims and granted Director Swinford's motion for

summary judgment, pursuant to Kentucky Rules of Civil Procedure ("CR") 56.03.[4]

Referee Culp appealed.

## II.    STANDARD OF REVIEW

The standard of review upon appeal of an order granting summary

judgment is "whether the trial court correctly found that there were no genuine

issues as to any material fact and that the moving party was entitled to judgment as

---

[4] CR 56.03 allows for summary judgment if "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Id.* Thus, a summary judgment looks only to questions of law, and we review *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016).

## III. ANALYSIS

Under Kentucky law, a negligence action requires proof of "the existence of a duty, breach thereof, causation, and damages." *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. App. 2009) (citations omitted). Duty is a question of law for the courts to determine, while breach and injury are questions of fact for a jury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003). Our Kentucky Supreme Court has explained that

> [n]o liability is imposed when the defendant is deemed to have acted reasonably under the given circumstances. So a more precise statement of the law would be that a landowner's duty to exercise reasonable care or warn of or eliminate unreasonable dangers is not breached. "When courts say the defendant owed no duty, they usually mean only that the defendant owed no duty *that was breached* or that he owed no duty *that was relevant on the facts*."

-5-

And without breach, there can be no negligence as a matter of law.

*Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 911-12 (Ky. 2013) (citations omitted).

Here, the parties agree that all persons have a duty to use care to prevent foreseeable injury. *See Kendall v. Godbey*, 537 S.W.3d 326, 331 (Ky. App. 2017) (citation omitted). On appeal, the parties actually agree a duty existed. However, they disagree as to whether a duty *was breached*. More specifically, Referee Culp argues that (a) issues of material fact exist; (b) foreseeability is a question of fact for the jury, not a question of law for the court; and (c) assuming foreseeability is an issue for the court, the trial court erred in granting summary judgment because "assaultive conduct" was reasonably foreseeable.

To the contrary, Director Swinford argues the trial judge appropriately determined that (a) there was no issue of material fact; (b) precedent does not prevent summary judgment in issues of foreseeability; and (c) Director Swinford did not breach a duty to Referee Culp to protect him from Coach Menifield's assault because the attack was not reasonably foreseeable.

While the basic criteria for a negligence action have remained consistent in Kentucky, *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 289 (Ky. 2015), the application of the rule of foreseeability has evolved in the last decade. *See Shelton*, 413 S.W.3d at 908.

In *Shelton*, the Kentucky Supreme Court clarified Kentucky tort law to "modernize" the analysis and to "eliminate unfair obstacles to the presentation of legitimate claims." *Shelton*, 413 S.W.3d at 904. The *Shelton* Court shifted the conversation around foreseeability: instead of being an aspect of the existence of a *duty*, the Court determined that foreseeability should be treated as a factor within the *breach* analysis. *Id.* at 903-04. However, that shift is limited to open-and-obvious cases, not cases involving third-party criminal actions, like the matter before us. *Walmart, Inc. v. Reeves*, ___ S.W.3d ___, 2023 WL 2033691, at *3 (Ky. Feb. 16, 2023) (not yet final) ("*Shelton*'s cabining of foreseeability to a breach analysis is thus limited only to open-and-obvious cases.").[5]

In *Reeves*, there was an attack upon a customer in a parking lot of a Lexington area Walmart. *Id.* at *1. The customer had exited the store and reached her car safely before two unknown men attempted to rob her. *Id.* She filed suit against Walmart, alleging negligence for not protecting against the assault and for not having a security presence to protect patrons. *Id.* Walmart moved for summary judgment which the trial court granted, noting that discovery had not shown other alleged criminal acts at or near the location, or of sufficient character

---

[5] *Reeves*, 2023 WL 2033691, at *3 (not yet final) was published well after the parties filed briefs in this matter. The parties relied on *Shelton*'s applicability, but as stated, the recent Supreme Court decision in *Reeves* makes *Shelton* inapplicable to the facts before us. A petition for rehearing was filed on March 8, 2023.

and number, as to have made this assault foreseeable to Walmart. *Id.* On appeal, a panel of this Court reversed, holding that *Shelton*'s foreseeability shift was intended to apply to *all* negligence claims, relying on *Carter*, 471 S.W.3d at 297. *Reeves*, *supra.* However, in *Reeves*, our Supreme Court clarified that our reliance on *Carter* was based on dicta and in error. *Id.* at *3.

> To clarify, our Supreme Court stated in *Reeves*:

> *Shelton*'s cabining of foreseeability to a breach analysis is thus limited only to open-and-obvious cases. Even if it were to extend beyond open-and-obvious cases, however, it certainly could not extend so far as cases involving third-party criminal actions. Landowners cannot control the actions of third parties on their property, making these cases markedly different from those involving the man-made or naturally occurring aspects of a property capable of maintenance or curative measures.

> Additionally, extending *Shelton* to third-party criminal activity would create an economically untenable reality for business owners and, ultimately, their customers.

> . . . .

> [A] landowner has a duty to protect patrons from third-party acts only if he or she "knows of activities or conduct of other patrons or third persons which would lead a reasonably prudent person to believe or anticipate that injury to a patron might be caused," and if he or she can reasonably safeguard against them. [*Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270, 271 (Ky. 1958)].

*Reeves*, 2023 WL 2033691, at *3 (not yet final).

-8-

The Court held that Reeves needed to provide evidence that a third-party criminal act involving attempted robbery and assault was reasonably foreseeable to Walmart. *Id.* at *4. Reeves's evidence was unable to reach this threshold because the criminal acts she presented were too distinct factually, occurred too distantly in time, and failed to establish a pattern that could lead Walmart to anticipate the kind of crime committed against Reeves. *Id.* Moreover, the Court stated that "foreseeability is specific to the premises at issue[.]" *Id.* Thus, in the matter before us, whether Director Swinford had a duty to protect Referee Culp from Coach Menifield's assault hinges upon whether the assault was reasonably foreseeable or could have been anticipated.

Here, in 10 years of coaching and promoting tournaments at the Sports Plex, Director Swinford had never experienced a fight among participants. The owner/operator of the Sports Plex testified that there had been four or five instances of verbal arguments between fans at previous events, but he knew of no physical assaults. Referee Culp produced "run reports" to the Sports Plex from local law enforcement; however, those reports included only one account of an assault by one participant upon another player in January 2017. That was not at an event promoted by Director Swinford, but rather at a league game promoted by some other renter of the facility. Referee Culp testified that he had refereed between 10 and 15 tournaments at the Sports Plex; he had never been concerned

about violence there previously; nor, had he seen any assaults on other participants or other referees. In 20 years as a referee, he had never experienced a fight or assaultive behavior. Finally, he stated that the punch from Coach Menifield was not signaled by anything that occurred during the game or the entire day. He had no clue that the punch was coming. Consistent with *Reeves*, the evidence presented does not establish a pattern that could have led Director Swinford and/or SI Basketball to anticipate the assault on Referee Culp. Since Coach Menifield's criminal acts were not reasonably foreseeable, the trial court did not err in granting summary judgment.

## IV. CONCLUSION

Accordingly, we AFFIRM the judgment of the McCracken Circuit Court.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Brian S. Katz | William E. Pinkston |
| Paducah, Kentucky | Paducah, Kentucky |